43 P.3d 513 (2002)
STATE of Washington, Respondent,
v.
Demetrius Marcel DUNCAN, Petitioner.
No. 71111-9.
Supreme Court of Washington, En Banc.
Argued November 29, 2001.
Decided April 11, 2002.
*514 Mark Watanabe, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Endel R. Kolde, Deputy, Seattle, for Respondent.
BRIDGE J.
This case presents the classic scenario where an investigation for one violation of law leads to the discovery of evidence for another, more serious, violation. While investigating the possession of an open container in public, a civil infraction, two police officers uncovered a felon in possession of a firearm who was also carrying a purse and credit cards belonging to another individual. We are asked to determine whether we will extend the principles from Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to include stops for civil infractions and, more specifically, whether the police officers in this case had a justifiable basis for stopping and detaining Demetrius Duncan.
We decline to extend the Terry principles to encompass civil infractions and we hold that in this instance the officers lacked a reasonable and justifiable basis for stopping and detaining Duncan. Accordingly, we reverse the Court of Appeals and reinstate the trial court's decision.

FACTS
Around 3:00 p.m. on October 7, 1999, Officers Renihan and Hockett drove past an enclosed bus stop in Seattle. They observed three black men standing in front of the shelter, and at least one brown paper bag sitting on a bench inside the shelter, with a glass bottleneck protruding from its top. One of the men later testified that people would, on occasion, leave beer bottles in the shelter when they boarded the bus. Seeing the bottle, the officers stopped to investigate a potential violation of the Seattle Municipal Code that prohibits possessing an open container in public. Seattle Municipal Code (SMC) 12A.24.025. Based on the officers' experience, bottles in paper bags often mean *515 the surreptitious consumption or possession of alcohol in public.
When the officers approached the shelter, they discovered a half-empty beer bottle sitting on the bench, approximately six inches from where Demetrius Duncan was standing. The bottle was closer to him than the other two people at the shelter. The bottle was cold to the touch and Officer Renihan could smell alcohol on Duncan's breath. Officer Hockett indicated that he did not smell alcohol. Each of the three men in the shelter denied drinking the beer. Despite his denial, the officers decided to cite Duncan for violating the open container ordinance.
Upon exiting the police vehicle Renihan had recognized Duncan from a prior contact and after obtaining Duncan's identification, Renihan remembered Duncan from an arrest nine months earlier where an officer had recovered a firearm and Duncan had to be wrestled to the ground. Renihan also recalled that Duncan had a history of violent criminal offenses, including murder. Based on this prior knowledge and the fact that Duncan was wearing a bulky jacket, which might conceal a firearm, Renihan quickly frisked Duncan to check for weapons and protect the officers' safety. Duncan had made no furtive movements or acted erratically in any way.
The officers uncovered a handgun in Duncan's waistband from the search. They then arrested Duncan for being a felon in possession of a firearm. Following the arrest, the officers searched Duncan and recovered a purse and credit cards from his pockets. Duncan was later charged with unlawful possession of a firearm, possession of a stolen firearm, and possession of stolen property.

PROCEDURAL HISTORY
Following a pretrial hearing, the trial court found that the officers' initial stop of Duncan was not justified under the Fourth Amendment to the United States Constitution or article I, section 7 of the Washington State Constitution. The court stated:
The officers in this case did not have reasonable grounds to believe that Duncan consumed, opened or possessed alcohol in public in or out of their presence in violation of SMC 12A.24.025. Duncan's mere proximity to the beer bottle was insufficient as a matter of law to support a finding of constructive possession."[[1]]
As a result of these findings, the trial court suppressed all of the evidence seized from Duncan and dismissed the charges against him.
The State appealed. Division One of the Court of Appeals reversed the trial court's order and remanded the case for a trial. State v. Duncan, No. 46174-5-I, 105 Wash. App. 1007, 2001 WL 181114 (Wn.Ct.App. Feb. 26, 2001). In an unpublished opinion, the Court of Appeals concluded that the arresting officer had probable cause to believe that an infraction had been committed. Id. The court stated that "an officer need not have evidence sufficient to prove every element of the crime beyond a reasonable doubt to possess probable cause for arrest." Id. at *2.

STANDARD OF REVIEW
This court reviews conclusions of law from an order pertaining to the suppression of evidence de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).

ANALYSIS
As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment and article I, section 7 of the Washington State Constitution. State v. Williams, 102 Wash.2d 733, 736, 689 P.2d 1065 (1984) (citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).
There are, however, a few "`"jealously and carefully drawn" exceptions'" to the warrant requirement which provide for those cases where the societal costs of obtaining a warrant (such as danger to officers or the risk of loss or destruction of evidence) outweigh the reasons for prior recourse to a neutral magistrate. *516 Williams, 102 Wash.2d at 736, 689 P.2d 1065 (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218. 95 Wash.2d 143, 622 P.2d 1218 (1980) (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (quoting Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)))). These jealously and carefully drawn exceptions include consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and Terry investigative stops. State v. Rife, 133 Wash.2d 140, 150-51, 943 P.2d 266 (1997). The State carries the burden of showing that the particular search or seizure in question falls within one of these exceptions. Williams, 102 Wash.2d at 736, 689 P.2d 1065 (citing Houser, 95 Wash.2d at 149, 622 P.2d 1218).
The State in this case contends that the seizure of Duncan was permissible as a Terry stop. We disagree. In Terry, the Supreme Court held that if an initial stop is justified, a police officer may make a reasonable search for weapons without violating the Fourth Amendment, regardless of whether he has probable cause to arrest the individual, if the circumstances lead the officer to reasonably believe that his safety or the safety of others is endangered. 392 U.S. at 20-27, 88 S.Ct. 1868. "[A]n officer may briefly stop an individual based upon reasonable suspicion of criminal activity if necessary to maintain the status quo while obtaining more information." State v. Miller, 91 Wash. App 181, 184, 955 P.2d 810, 961 P.2d 973 (1998). See also Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). For a permissible Terry stop the State must show that (1) the initial stop is legitimate; (2) a reasonable safety concern exists to justify the protective frisk for weapons; and (3) the scope of the frisk is limited to the protective purposes. State v. Collins, 121 Wash.2d 168, 173, 847 P.2d 919 (1993) (citing Adams, 407 U.S. at 146, 92 S.Ct. 1921). Because neither the reasonableness of the search nor its scope is challenged here, we will focus on whether the initial stop was justified.
To justify a seizure on less than probable cause, Terry requires a reasonable, articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime. Terry, 392 U.S. at 21, 88 S.Ct. 1868. Officers Renihan and Hockett approached Duncan and his two companions to investigate a suspected violation of SMC 12A.24.025, which forbids opening, possessing or consuming liquor in a public place. Possessing an open container in public is a noncriminal violation of the SMC, a civil infraction. Both officers testified that neither Duncan nor the other two men were free to leave during their investigation. The trial court found, and we agree, that Duncan was thus seized under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. For that seizure to be legitimate, it must be either (a) based on a reasonable suspicion of criminal activity, in accordance with Terry principles, or (b) a proper detention to issue a notice of a civil infraction.

Applicability of Terry v. Ohio

A few months prior to the officers' detention of Duncan, the Legislature amended RCW 66.44.100, relating to the opening or consumption of liquor in a public place, decriminalizing such conduct from a misdemeanor to a civil infraction under chapter 7.80 RCW, effective July 25, 1999. By amending RCW 66.44.100, the Legislature effectively decriminalized SMC 12A.24.025 as well, making a violation of this code provision a civil infraction.[2]
To effectuate the public policy of preventing criminal activity in progress, Terry and its progeny have predominantly analyzed the reasonable suspicion of an ensuing crime. In State v. Pressley, 64 Wash.App. 591, 593, 825 P.2d 749 (1992), for example, a law enforcement officer suspected that he was witnessing a drug transaction. The officer was in a well-known area for drug trafficking and gang activity. Id. He observed the respondent and a companion huddled together looking *517 at an object in the respondent's hand, which he suspected was crack cocaine or another narcotic. Id. at 594, 825 P.2d 749. When the officer approached in a marked vehicle, the respondent exclaimed, "`Oh Shit'" and she and her friend quickly dispersed. Id. Based on these facts, the Court of Appeals agreed with the trial court that the officer had articulated a specific justification for the reasonable suspicion of potential or actual criminal activity. Id. at 598-99, 825 P.2d 749.
Essentially the only circumstance where, absent a reasonable articulable suspicion of criminal activity, Terry has been applied is to stops incident to traffic violations.[3]See, e.g., United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); State v. Ladson, 138 Wash.2d 343, 350-51, 979 P.2d 833 (1999). The State would have us extend the Terry stop exception further to include all civil infractions. We decline to do so.
Traffic violations create a unique set of circumstances that may justify this extension of Terry, but which may not be appropriate for other civil infractions. For example, this court has acknowledged the diminishment of privacy interests "due to the law enforcement exigency created by the ready mobility of vehicles and governmental interests in ensuring safe travel, as evidenced in the broad regulation of most forms of transportation." State v. Johnson, 128 Wash.2d 431, 454, 909 P.2d 293 (1996) (footnotes omitted) (citing United States v. Ross, 456 U.S. 798, 806-07, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); California v. Carney, 471 U.S. 386, 390-93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)). Detentions for traffic violations have a broader scope than detentions for other civil infractions. When issuing notice of a civil infraction, an officer may briefly detain a person long enough to check his or her identification. RCW 7.80.060.[4] In contrast, our Legislature has specifically authorized:
Whenever any person is stopped for a traffic infraction, the officer may detain that person for a reasonable period of time necessary to identify the person, check for outstanding warrants, check the status of the person's license, insurance identification card, and the vehicle's registration, and complete and issue a notice of traffic infraction.
RCW 46.61.021(2). Thus, the traffic violation exception to the application of Terry stops for criminal violations is distinguishable from the civil infraction before the court. We decline to extend the Terry stop exception under the Fourth Amendment and article I, section 7 of the Washington State Constitution to nontraffic civil infractions.
In declining to extend Terry to general civil infractions, we also consider the valid public policy principles behind permitting a Terry stop. In Terry the Court reasoned that the lesser Fourth Amendment burden imposed by the protective frisk was justified by the strong government interest in police officer safety:
We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American *518 criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.
392 U.S. at 23, 88 S.Ct. 1868.
We interpreted the application of this safety principle in State v. Belieu, 112 Wash.2d 587, 773 P.2d 46 (1989), stating, "courts are reluctant to substitute their judgment for that of police officers in the field. `A founded suspicion is all that is necessary, some basis from which the court can determine that the [frisk] was not arbitrary or harassing.'" Id. at 601-02, 773 P.2d 46 (emphasis omitted) (quoting Wilson v. Porter, 361 F.2d 412, 415 (9th Cir.1966)).
The policy concerns for police safety are in tension with the constitutional guarantees of personal privacy. The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means. State v. Putman, 65 Wash.App. 606, 612, 829 P.2d 787 (1992). In Rife, we articulated several policy considerations in support of the exclusionary rule: to protect the privacy interests of individuals against unreasonable government intrusions, to deter law enforcement officers from unlawfully obtaining evidence, and to preserve the dignity of the judiciary by providing a mechanism for the courts to refuse to consider unlawfully obtained evidence. 133 Wash.2d at 148, 943 P.2d 266 (citing State v. Boland, 115 Wash.2d 571, 581, 800 P.2d 1112 (1990)).
Applying these competing interests, the United States Supreme Court has held that on occasion law enforcement interests will outweigh an individual's interest in freedom from being stopped and detained. In Hensley, for example, the Court addressed the situation where a police officer stopped and detained an individual based on a wanted flyer issued following an armed robbery. The Court specifically balanced "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." 469 U.S. at 228, 105 S.Ct. 675 (citing United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); Michigan v. Summers, 452 U.S. 692, 698-701, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). The Court noted the interests of effective crime prevention and detection and exigent circumstances, which may support a reasonable Terry stop. Id. at 228, 105 S.Ct. 675. It recognized that some of these same concerns may not be present when dealing with a past crime. Id. However, to support the strong government interest in solving crimes and bringing offenders to justice the Court held that a Terry stop may be permissible when investigating a completed felony. Id. at 229, 105 S.Ct. 675. The Court's focus on preventing crimes, and promoting the interests of justice in arresting felons in Hensley, suggests that the interest in preventing civil infractions may not be accorded the same weight.
The Washington constitution affords greater privacy protection than the Fourth Amendment. See generally Johnson, 128 Wash.2d 431, 909 P.2d 293; Mendez, 137 Wash.2d at 218, 970 P.2d 722. Article I, section 7 states, "No person shall be disturbed in [that person's] private affairs, or [the person's] home invaded, without authority of law." Privacy interests protected include, "`"those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant."'" Johnson, 128 Wash.2d at 446, 909 P.2d 293 (quoting Boland, 115 Wash.2d at 577, 800 P.2d 1112 (quoting State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984))).
Furthermore, this court has cited favorably the common law rule requiring a warrant prior to arresting an individual for the commission of a misdemeanor. State v. Hornaday, 105 Wash.2d 120, 123, 713 P.2d 71 (1986). "[A] police officer, even with probable cause, may not arrest a person for a misdemeanor committed outside the presence of the officer, unless the officer has a warrant." Id. (citing State v. Bonds, 98 Wash.2d 1, 9-10, 653 P.2d 1024 (1982), cert. denied, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983)). This rule illustrates the higher burden this court imposes upon officers when investigating lesser crimes. Accepting the presumption that more serious crimes pose a greater risk of harm to society, we place an *519 inversely proportional burden in relation to the level of the violation. Thus, society will tolerate a higher level of intrusion for a greater risk and higher crime than it would for a lesser crime.
By logical extension this reasoning applies when a civil infraction is committed, as in this case. When investigating a civil infraction an officer is not seeking to arrest an individual, but rather to issue a citation. In light of the lower risk to society involved with civil infractions, the common law principle recognized in Hornaday suggests that a less intrusive procedure would be more acceptable than with the commission of a felony or even a misdemeanor.
This rationale is also supported by the reasoning behind the United States Supreme Court's allowance of the Terry stop. The Court in Terry, permitted a limited search when an officer reasonably believed that a crime was about to occur. The officer in Terry observed two men pacing back and forth along an identical route, stopping to stare at the same store window and then conferring with each other and a third accomplice. Terry, 392 U.S. at 5, 88 S.Ct. 1868. Based on more than 30 years of experience in the field, the officer suspected that the men were casing a potential armed robbery. Id. at 5-7, 88 S.Ct. 1868. When the officer approached the men and one of them mumbled an inaudible comment, he patted them down for weapons and recovered a .38 caliber revolver. Id.
The situation in Terry, where the officer had reason to suspect a potential armed robbery contrasts starkly with Renihan's and Hockett's suspicion of an open container violation, an infraction that by its nature would not obviate the possession of a weapon. Balancing the competing interests expressed in Terry and its progeny, therefore, a stop and frisk should not be permissible in the context of two officers observing a man with a bulky jacket standing next to a bottle at a public bus stop.

Reasonable Detention to Issue Civil Infraction
Although we decline to extend Terry to the civil infraction at issue here, chapter 7.80 RCW provides an independent basis that could justify a stop for the investigation of a civil infraction. RCW 7.80.050(2) explicitly states, "[a] notice of civil infraction may be issued by an enforcement officer when the civil infraction occurs in the officer's presence." Alternatively, RCW 7.80.050(3) provides that "[a] court may issue a notice of civil infraction if an enforcement officer files with the court a written statement that the civil infraction was committed in the officer's presence or that the officer has reasonable cause to believe that a civil infraction was committed." Neither Renihan nor Hockett filed such a statement with the court. Thus, to determine whether the initial stop of Duncan was justified we must evaluate whether the offense occurred in the officers' presence.
The trial court held, as a matter of law, that the officers here did not have reasonable grounds to determine that Duncan possessed alcohol in public in violation of SMC 12A.24.025.[5] We agree. Because no actual possession occurred, the State relies on an argument that there was constructive possession. State v. Weiss, 73 Wash.2d 372, 375, 438 P.2d 610 (1968) (court found constructive possession of marijuana confiscated from house where defendant was sleeping); State v. Partin, 88 Wash.2d 899, 905, 567 P.2d 1136 (1977) (court will analyze totality of circumstances to determine constructive possession). The State argues that the trial court erred when it based its ruling on a conclusion that the officers could not have proven that Duncan possessed the alcohol in public. The State asserts that the officers need show only reasonable suspicion of a violation to detain and question an individual and that an initial detention is reasonable if the officer can point to specific and articulable facts that support a reasonable suspicion of unlawful activity. Pressley, 64 Wash.App. at 595-96, 825 P.2d 749.
The State is correct in its assertion that it need not be able to prove all elements of a crime beyond a reasonable doubt before an officer can stop an individual *520 to investigate a suspected crime. Id. However, for a permissible detention, the officer must have a reasonable and articulable suspicion of a substantial possibility that a crime has occurred or is about to occur. State v. Kennedy, 107 Wash.2d 1, 726 P.2d 445 (1986). Because a crime is not involved here and we have declined to extend Terry, we rely on the statute previously cited, and an assessment of whether the infraction occurred in the officers' "presence." Furthermore, Hockett testified that he routinely made stops similar to this one, evidencing a lack of any particularized articulable suspicion.[6]
In Hornaday, this court interpreted what is meant to possess or consume alcohol in the presence of an officer for a minor in possession of alcohol, a misdemeanor. There, a police officer observed that Kevin Hornaday, the defendant, appeared to be intoxicated. 105 Wash.2d at 122, 713 P.2d 71. The officer approached Hornaday and could smell a "strong odor of alcohol on the defendant's breath." Id. The officer requested Hornaday's identification and learned that the defendant was only 20 years old. Id. The officer then arrested the defendant for illegal consumption or possession of alcohol in violation of RCW 66.44.270. Id.
On appeal we evaluated whether the misdemeanor occurred in the presence of the officer. Id. at 123, 713 P.2d 71. Applying RCW 10.31.100[7] we held that possessing or consuming alcohol is not committed in an officer's presence if the officer does not witness the person's ingestion of the alcohol, but only senses symptoms indicating that the person is presently intoxicated. Id. at 129, 713 P.2d 71. We also evaluated "possession" and reasoned that a "defendant `possesses' a controlled substance when the defendant knows of the substance's presence, the substance is immediately accessible, and the defendant exercises `dominion or control' over the substance." Id. at 125, 713 P.2d 71 (quoting In re Interest of R.B., 108 Wis.2d 494, 496, 322 N.W.2d 502 (1982)). We noted that possession can include constructive as well as actual possession and that constructive possession of liquor denotes control of the substance. Id.
While this court is not asked to determine whether Duncan actually violated the open container ordinance, Hornaday is still instructive because there we recognized that
[t]he question is whether the officer had probable cause to believe that a crime was being committed in his presence. Discovery of alcohol on a minor's breath may provide an officer with probable cause to believe that a crime has been committed, but not that it is presently being committed.
Id. at 126, 713 P.2d 71.
The Court of Appeals here relied on State v. Morgan, 78 Wash.App. 208, 896 P.2d 731 (1995), and State v. Haggarty, 20 Wash.App. 335, 579 P.2d 1031 (1978), to conclude that the facts were sufficient to lead a person of reasonable caution to believe that Duncan had committed an open container violation. Duncan, 105 Wash.App. 1007, 2001 WL 181114, at *2. In Morgan the police officer arrested the driver and passenger of a vehicle who had drug paraphernalia spread on the hood of their truck. 78 Wash.App. at 210, 896 P.2d 731. The Court of Appeals reasoned that both the driver and the passenger had equal access to the paraphernalia; therefore, the arrest was proper even though the evidence was insufficient to prove possession beyond a reasonable doubt. In Haggarty, the officers smelled marijuana and observed marijuana residue within arm's length from the defendant who appeared to be under the influence of a narcotic. 20 Wash. App. at 337, 579 P.2d 1031. Based on these facts, the Court of Appeals concluded that there were "ample" grounds for arrest. Id. at 339, 579 P.2d 1031. These cases are distinguishable.
In the case before us, the officers observed a bottle sitting on a bus stop bench and three men standing at the bus stop. The bottle was accessible, but no one was holding the bottle, or otherwise exhibiting "dominion or control" demonstrative of possession as interpreted *521 in Hornaday. The trial court noted that
[a]ll that we have, apparently, from the officers' testimony is three men standing at a bus shelter and there is a brown bag inside the bus shelter with a bottle sticking out. From the officers' approach we don't even at that point know it's beer.[[8]]
Unlike in Morgan, where the drug paraphernalia was spread across the hood of the owner's vehicle, Duncan and his companions were standing in a public place. The fact that the defendants in Morgan were inside the vehicle displaying the illegal materials lends more credence to a suspicion of ownership of the contraband than three men at a public bus stop with a bottle nearby.
While the bottle was close to Duncan, the officers did not observe Duncan open, touch or drink from the bottle. Nor does the record indicate that Duncan stood or moved away from the bottle when he saw the police approach. Unlike in Haggarty, there is no evidence suggesting that Duncan exhibited the effects of intoxication and there is conflicting testimony from the officers whether Duncan smelled of alcohol.[9] The officers stated that the bottle was cold to the touch. This could have resulted from the chilly October weather and the bottle could just as easily have been warm to the touch if Duncan had been holding it. We have recognized that proximity and evidence of temporary handling may be insufficient to establish constructive possession. State v. Callahan, 77 Wash.2d 27, 31, 459 P.2d 400 (1969). Significantly, both Morgan and Haggarty involved criminal violations, not civil infractions, making them distinguishable from Duncan's situation. Thus, considering the officers did not witness Duncan drinking the alcohol, or holding the bottle, or reacting to their approach, the violation did not occur in their presence.

CONCLUSION
Warrantless searches and seizures are per se unreasonable in violation of state and federal constitutional rights. However, the United States Supreme Court and this court have recognized a few carefully drawn exceptions when a limited stop may be permissible. To stop and detain Duncan, the officers needed a reasonable and articulable suspicion that a crime was about to occur. Possessing or consuming alcohol in public is not a crime and we decline to extend the Terry stop exception to include nontraffic civil infractions. The officers may also have possessed grounds to stop and detain Duncan if the civil infraction either occurred in their presence or they had filed a statement with the court that they had a reasonable basis upon which to believe that a civil infraction had been committed. Duncan did not have actual or constructive possession of the bottle, thus the infraction did not occur in their presence. No statement was filed with the court.
We reverse the Court of Appeals and reinstate the trial court's decision.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS, JJ., concur.
NOTES
[1] Clerk's Papers (CP) at 31.
[2] When the officers stopped Duncan they apparently believed that an open container violation was still considered a criminal act.
[3] But see New Jersey v. T.L.O., 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Fourth Amendment's prohibition on unreasonable searches and seizures applied to school official's search of student's purse when he believed student possessed cigarettes in violation of school policy because school official's need to maintain order outweighed student right to privacy).
[4] A person who is to receive a notice of civil infraction under RCW 7.80.050 is required to identify himself or herself to the enforcement officer by giving his or her name, address, and date of birth. Upon the request of the officer, the person shall produce reasonable identification, including a driver's license or identicard.

A person who is unable or unwilling to reasonably identify himself or herself to an enforcement officer may be detained for a period of time not longer than is reasonably necessary to identify the person for purposes of issuing a civil infraction.
RCW 7.80.060.
[5] CP at 31.
[6] Transcript of Proceedings (TP) at 66.
[7] RCW 10.31.100 permits a warrantless arrest for a misdemeanor only if the offense is committed in the arresting officer's presence.
[8] TP at 123.
[9] As additional evidence of his suspicion, one of the officers testified that he smelled alcohol on Duncan's breath, an observation that we found helpful, but inconclusive of possession or consumption in Hornaday. 105 Wash.2d at 127-28, 713 P.2d 71.