# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
          )  DIVISION ONE
     Respondent, )
          )  No. 77730-1-I
     v. )
          )  UNPUBLISHED OPINION
REBECCA LOUISE MCINTIRE, )
          )
     Appellant. )  FILED: February 26, 2018
          )

DWYER, J. — Following a bench trial, Rebecca McIntire was found guilty of unlawful possession of a controlled substance. On appeal, McIntire contends that the trial court erred by denying her motion to suppress evidence of the drugs discovered in her purse. Finding no error, we affirm.

I

The State charged Rebecca McIntire with possession of heroin. McIntire filed a motion to suppress evidence of the heroin discovered in her purse. Following a CrR 3.6 hearing, the trial court entered written findings of the following undisputed facts:

   1.1  Officer John Dorff and Sergeant Doug Clary were employed by the Centralia police department and working in their capacity as law enforcement officers on October 1, 2016.
   1.2  At approximately 4:30 pm, Dorff and Clary arrived at the King Oscar Motel in Centralia to look for Natalie Sanchez based on an anonymous tip that she was staying in a particular room at that hotel.
   1.3  Natalie had an active warrant for her arrest on October 1, 2016.

1.4 Both Dorff and Clary went to the lobby of the hotel and spoke with the clerk about Natalie staying at the hotel.

1.5 The clerk informed Dorff and Clary that Natalie Sanchez was not registered in that particular room, but Alicia Sanchez was.

1.6 The clerk stated that if anyone other than Alicia Sanchez was in the hotel room, she (the clerk) wanted them trespassed from the hotel.

1.7 The clerk informed Dorff and Clary how to get to the room Alicia was registered in.

1.8 When they arrived at the hotel room, Dorff and Clary knocked on the door, which was answered a short while later by a person Clary visually recognized as Rebecca McIntire.

1.9 Dorff explained to McIntire why he and Clary were at her hotel room, and asked if Natalie was in the room.

1.10 McIntire informed Dorff and Clary that she was the only person in the hotel room.

1.11 Around this same time, the clerk came to the room, observed McIntire, stated that she (McIntire) was not registered to the room, and requested law enforcement trespass McIntire from the room.

1.12 The officers did not obtain any additional information regarding the basis for the clerk's request to trespass McIntire, and their authority to trespass was based on the clerk's request alone.

1.13 When the clerk requested McIntire be trespassed, Dorff and Clary told her to gather her belongings and leave the room.

1.14 While she was gathering her belongings, Dorff and Clary entered the hotel room to ensure Natalie was not present and to make sure McIntire did not pick up any type of weapon.

1.15 During the time McIntire was gathering her belongings, Dorff asked for her driver's license in a normal, non-threatening tone.

1.16 Dorff was in possession of McIntire's license for an unknown length of time.

1.17 That request was for Dorff to enter McIntire's name into the Spillman system to log for future officers to be able to see [that] McIntire was trespassed from the King Oscar Motel.

1.18 An additional purpose for running McIntire's name was to check for any active warrants.

1.19 The entry into Spillman for trespassing notice and the check for warrants are run on the same system and accomplished at the same time.

1.20 McIntire returned as having a misdemeanor warrant from Chehalis.

1.21   McIntire was advised she was under arrest for the warrant.

1.22   When McIntire was advised she was under arrest, she was in possession of her belongings she had gathered from the room.

1.23   When she was advised she was under arrest, McIntire asked if she could return the items to the room.

1.24   When advised that she could not return the items to the room, McIntire stated that the purse she was carrying contained her wallet, cell phone, and her identification, but the purse was not hers and anything else inside the purse she knew nothing about.

1.25   A search of the purse incident to McIntire's arrest revealed a plastic baggie that contained a receipt from Goodwill that was folded up. Inside the receipt was a black, tar-like substance.

1.26   Clary later field-tested this substance, which returned positive for heroin.

The trial court entered the following conclusions of law:

2.1    Dorff and Clary were validly trespassing McIntire from the hotel based on the request of the hotel clerk.

2.2    The request for McIntire's identification was necessary to register her information for trespassing purposes.

2.3    The seizure of McIntire's license was minimally intrusive to accomplish that goal.

2.4    The discovery of the controlled substances in McIntire's purse was pursuant to a lawful search incident to arrest.

2.5    All statements made by McIntire were voluntary and admissible at trial.

The trial court denied the motion to suppress. After a stipulated facts bench trial, the trial court found McIntire guilty and imposed a standard range sentence. McIntire appeals.

II

McIntire contends that she was unlawfully seized when Dorff asked for her identification. We disagree.

Because McIntire does not challenge the trial court's findings of fact, they are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

We review the trial court's conclusions of law de novo. State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

A person is seized under article I, section 7 of the Washington Constitution "'only when, by means of physical force or a show of authority,' his or her freedom of movement is restrained and a reasonable person would not have believed he or she is (1) free to leave, given all the circumstances, or (2) free to otherwise decline an officer's request and terminate the encounter." O'Neill, 148 Wn.2d at 574 (citations and internal quotation marks omitted) (quoting State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998)). "[T]he 'reasonable person' test presupposes an *innocent* person." Florida v. Bostick, 501 U.S. 429, 438, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). The standard is "a purely objective one, looking to the actions of the law enforcement officer." Young, 135 Wn.2d at 501. The defendant bears the burden of proving that a seizure occurred. O'Neill, 148 Wn.2d at 574.

"'[N]ot every encounter between a police officer and a citizen is an intrusion requiring an objective justification.'" State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004) (alteration in original) (quoting United States v. Mendenhall, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

> "Examples of circumstance that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. . . . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

Young, 135 Wn.2d at 512 (alteration in original) (quoting Mendenhall, 446 U.S. at 554-55).

Thus, "the police are permitted to engage persons in conversation and ask for identification even in the absence of an articulable suspicion of wrongdoing." Young, 135 Wn.2d at 511. Moreover, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984).

Here, the trial court found that Dorff asked for McIntire's identification in a "normal, non-threatening tone." Nothing in the record indicates that the officers used any show of force or authority, commanded McIntire to relinquish her identification, or prevented her from leaving without first complying with the officers' request. Although the record does not establish for how long Dorff retained possession of McIntire's driver's license, it is clear that he did not remove the license from her presence.

Under these circumstances, McIntire fails to demonstrate that a seizure occurred when the officers asked for her identification. See, e.g., O'Neill, 148 Wn.2d at 578-80 (no seizure occurred when officer shined spotlight on defendant's car, approached car and shined flashlight into it, asked defendant to roll down window, asked defendant to try to start car, and asked defendant for his identification); State v. Hansen, 99 Wn. App. 575, 579, 994 P.2d 855 (2000) (no seizure occurred when an officer requested the defendant's identification and

handed it to another officer, who took note of the defendant's name and birthdate in the presence of the defendant); State v. Smith, 154 Wn. App. 695, 700, 226 P.3d 195 (2010) (no seizure occurred when an officer requested the defendant's identification and remained in close proximity of the defendant while holding the identification). Because McIntire fails to demonstrate any constitutional violation, the trial court properly denied her motion to suppress.

III

The State has indicated that it will not seek appellate costs in this appeal. Accordingly, we direct that no such costs be imposed. RAP 14.2.

Affirmed.

We concur:

_Trickey, ACJ_   _Spearman, J._