FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 16 AM 8: 39



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76505-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| SHANE LEE MOY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 16, 2018 |
| | ) | |

ANDRUS, J. — Shane L. Moy, a passenger in a car, claims he was unlawfully seized during a traffic stop. Moy argues the trial court erred in denying his motion to suppress evidence of heroin found in a search incident to his arrest. The record shows that after the police arrested the vehicle's driver, Moy was free to leave. But instead, he volunteered to drive the car away and gave a false identity to the police, which led to his arrest on an outstanding warrant. We affirm.

## FACTS

Around 1:00 a.m. on a Saturday morning, Lynnwood Police Officer Zachary Yates stopped a Chevy Blazer on Highway 99 after he saw it was missing both a front and back license plate, and its "entire back window [was] busted out and missing." When he pulled the car over, he saw what he thought might be a temporary registration mounted on the rear panel where the window would have been. As he walked up to the Blazer, Yates saw three occupants: a male driver, a male passenger in the front seat, and a female passenger in the back seat. Yates

also saw the steering column had been "completely ripped out and held together with electric tape." Yates suspected the vehicle was stolen so he requested a second officer for backup for his own safety.

Before the second officer arrived, Yates asked the visibly nervous male driver for his driver's license. The driver produced a Washington State identification card bearing the name Hunter Fuhrmann. Yates asked Fuhrmann who the vehicle belonged to, and Fuhrmann told him he had purchased the vehicle and had a bill of sale, but did not have it with him. He also lacked proof of liability insurance.

While Yates was talking to Fuhrmann, Officer Beau Mattheis arrived and walked up to the passenger side of the car. Mattheis saw several knives in the Blazer, including at least one on the floorboard near the male passenger's feet. Although he could not specifically recall speaking to the passengers, Mattheis testified he usually tries to talk with vehicle occupants "to keep them preoccupied." Mattheis was "fixated" on the presence of knives "for officer safety reasons," and stayed on the passenger side of the vehicle throughout the traffic stop.

Yates returned to his patrol car to check Fuhrmann's identity and learned he had a suspended driver's license. Yates arrested Fuhrmann and detained him in the back of his patrol car.

With Furhmann in custody and concerned that the Blazer was not legally parked, Yates considered whether to call a tow truck to impound the vehicle or have one of the passengers move it. Suspecting it would be a long wait for a tow truck at that time of night, Yates asked the front seat passenger, later identified as

Moy, if he had a valid driver's license. Yates told Moy that if either of the passengers had a valid driver's license, they could leave with the vehicle once he verified the Blazer was not stolen. Moy falsely (it turns out) told Yates he had a valid driver's license, but he was not carrying it. So Yates asked for his name and the last four digits of his social security number to check the licensing records. Moy identified himself as Steven G. Moy, born on January 23, 1980, but claimed he did not know his social security number. Yates asked Moy how old he was, and Moy replied, "36" before "quickly chang[ing] it to '37' and stat[ing], 'I just turned 37.'"

At this point, Yates suspected Moy was lying and advised him to be "honest about his identity." Moy denied lying about his identity. Yates looked up the licensing photo associated with the name Steven G. Moy and discovered Moy was not the person depicted in the photo. Yates confronted Moy who then admitted he had lied because there was an outstanding warrant for his arrest. Yates confirmed the existence of a felony escape warrant for Moy. Mattheis arrested Moy and searched him, finding heroin in his pocket.

Moy was charged with possession of a controlled substance while on community custody. Moy filed a CrR 3.6 motion to suppress evidence of the heroin, challenging the legality of the traffic stop. During the hearing, Yates and Mattheis testified about the circumstances of their interactions with Furhmann and Moy. They confirmed their patrol cars, with the lights activated, were parked behind the Blazer. Neither officer explicitly told Moy or the other passenger that they were free to leave. But neither officer ever told them they could not leave

either. Both Yates and Mattheis testified that before Moy provided a false identity, he was free to leave. But neither passenger attempted to walk away or step out of the car. Neither passenger indicated in any way that they wanted to leave. The entire traffic stop and arrests took between 15 and 20 minutes.

The trial court concluded the initial traffic stop was lawful, and the officers had not seized Moy. The trial court found the officers did not block or otherwise prevent the passengers from leaving; they did not demand identification from Moy, and when Yates told Moy he and the other passenger could possibly drive the car away, there was no indication Moy was not free to leave. For this reason, the court concluded there was no seizure of the passengers. The trial court further concluded that even if the police had seized the passengers, there was sufficient articulable suspicion for a Terry[1] detention.

After a stipulated bench trial, the trial court found Moy guilty as charged.

## ANALYSIS

Moy contends the trial court erred in denying his CrR 3.6 motion to suppress evidence found during a traffic stop. The Fourth Amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution prohibit an unreasonable search and seizure without a warrant, unless one of the few exceptions to the warrant requirement applies. State v. Rankin, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). The party asserting an unlawful seizure bears the burden of establishing it. State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998). If

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the defendant establishes that a seizure occurred, the State bears the burden of showing the seizure falls within one of the "jealously and carefully drawn exceptions" to the warrant requirement, such as a Terry traffic stop. State v. Duncan, 146 Wn.2d 166, 171-72, 43 P.3d 513 (2002). A Terry stop is permissible whenever an officer has "a reasonable, articulable suspicion, based on specific, objective facts" that the person stopped has been or is about to be involved in criminal activity. Id. at 172.

We review challenged findings of fact from suppression hearings under the substantial evidence standard. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Substantial evidence exists where there is evidence sufficient to "persuade a fair-minded, rational person of the truth of the finding." Id. at 644. In reviewing the denial of a motion to suppress, we review the trial court's conclusions of law de novo. State v. Fuentes, 183 Wn.2d 149, 157, 352 P.3d 152 (2015). "Whether a person has been seized . . . is a mixed question of law and fact." State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Whether the trial court's factual findings establish a seizure is a question of law, which we review de novo. Id.

Moy asserts the trial court erred in concluding that he was not seized during the traffic stop. We agree. In Brendlin v. California, the United States Supreme Court held that during a traffic stop, all persons in the vehicle, not just the driver, are seized from the moment the car stops on the side of the road. 551 U.S. 249, 263, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). In doing so, the Court abrogated the contrary holding in State v. Mendez, 137 Wn.2d 208, 970 P.2d 722 (1999). Brendlin, 551 U.S. at 259 n.5. A person is seized by the police under the Fourth

Amendment when an officer, by means of physical force or show of authority, restrains that person's freedom of movement by intentional means. Id. at 254. When a passenger's submission to a show of governmental authority takes the form of "passive acquiescence," the test is whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Id. at 255. The Court held under the circumstances of Brendlin, "any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." Id. at 256-57.

When a car is pulled over at 1:00 a.m. in the morning, and two police officers are present, with one on each side of the vehicle—and where one officer is challenging the driver's ownership of the vehicle and the second officer is standing on the passenger side of the car close enough to keep an eye on the floorboards of the front passenger area—a reasonable person would not expect that police would allow a passenger to open his door and walk away. In view of all of the circumstances surrounding this stop, a reasonable person could conclude he was not free to leave while the police investigated the driver.

Moy also argues that the police lacked a factual basis to detain him. We disagree. The trial court found there was a reasonable, articulable suspicion for the Terry detention of the driver and the passengers, including Moy, because of "[t]he broken out windows, the missing front and back license plates, the ripped out steering column held together with electrical tape, and [Moy's ability] to observe the damaged steering column because of his position as front seat passenger."

The trial court also found that officers observed "walky-talkies, bear mace, and a knife inside of the vehicle." Id. Finally, the trial court found that the driver was unable to provide insurance or registration information and claimed to have purchased the car for $100.00. Id. Because Moy did not challenge these findings of fact, we accept them as verities on appeal. Hill, 123 Wn.2d at 644. The findings support the conclusion that the police had a reasonable and articulable suspicion that the driver was in violation of RCW 46.16A.030(2)[2] and that the Blazer may have been stolen sufficient to justify the Terry investigatory stop. The traffic stop was lawful.

Moy argues that even if the police had a basis for stopping the driver, they lacked a reasonable suspicion that he was committing a crime. The same argument, however, was rejected in Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). In Arizona v. Johnson, the United States Supreme Court held that if a Terry stop is lawful, the police do not need to have an independent cause to believe that each occupant in the vehicle is involved in criminal activity. Id.

In addition, in State v. Flores, our Supreme Court recognized that during a traffic stop, officers may seize passengers to control the scene of an investigation to ensure their safety if they can articulate an objective rationale for doing so. 186 Wn.2d 506, 516, 379 P.3d 104 (2016). The "objective rationale" standard is a

---

[2] "It is unlawful for a person to operate any vehicle on a public highway of this state without having in full force and effect a current and proper vehicle registration and displaying license plates on the vehicle." (emphasis added).

lower standard than is required for a <u>Terry</u> stop. <u>Id.</u> Factors supporting the objective rationale may include the time of day, the number of officers, the number of vehicle occupants, or other officer knowledge relevant to the situation. <u>Id.</u> Here, the unchallenged findings support the officer's initial belief that the car was stolen. The presence of three people in the car and the time of the traffic stop led Yates to ask for officer backup to ensure his own safety. Once Mattheis arrived, he saw several knives in the Blazer, including at least one near Moy's feet, and he became "fixated" on the presence of these knives. He remained close to Moy to maintain visual contact with the possible weapons to ensure Yates's safety; again actions that were objectively reasonable.

Moy argues that, after the police arrested the driver, the passengers would have reasonably believed they had to remain in the car. The record here does not support his argument. To determine when a seizure ends, we look to whether an officer's words and actions would have conveyed to a reasonable person that he was free to leave. <u>Rankin</u>, 151 Wn.2d at 695 (a seizure occurs when considering the actions of law enforcement, an individual's freedom of movement is restrained and an individual would not believe he was free to leave). The question is whether a reasonable person would have felt free to decline the officer's request for information or to otherwise terminate the encounter at that stage of the traffic stop. <u>Id.</u>

In this case, immediately after arresting the driver, Yates broached the topic of having one of the passengers drive the Blazer away to avoid calling a tow truck.[3] Yates made this suggestion within minutes of the initial stop. When a police officer approaches a passenger to suggest he can leave with the vehicle if he has a valid license, these words would convey to any reasonable person that the police officer was no longer detaining him. Moy could have simply declined to answer the officer's question or told the truth that he lacked a valid driver's license and the encounter would have ended. The record and the unchallenged findings of fact support the trial court's conclusion that at this stage, a reasonable person would have felt free to leave.

This conclusion is further supported by the trial court's undisputed factual finding that Moy volunteered a name to the officers when the possibility of driving the Blazer away was broached. A consensual encounter with police is not a seizure. State v. Butler, 2 Wn. App. 2d 549, 557, 411 P.3d 393 (2018). A police officer may ask a passenger if he wishes to drive a vehicle from the scene after arresting the driver; if the passenger consents, the officer may determine if the passenger has a valid driver's license. State v. Mennegar, 114 Wn.2d 304, 309, 787 P.2d 1347 (1990). This type of encounter is "consensual in nature and does not constitute a seizure of the passenger." Id. When Moy chose to remain on the

---

[3] In Washington State, officers have a duty to consider reasonable alternatives to impoundment. State v. Tyler, 177 Wn.2d 690, 699, 302 P.3d 165 (2013).

scene, after being told he might be able to drive away in the car, the encounter was consensual.  The trial court did not err in denying Moy's motion to suppress.

We affirm.

_Beth M Andrus_, J.

WE CONCUR:

_Schindler_, J.                  _Appelwick_, C.J.