# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54736-8-II |
| Respondent, | |
| v. | |
| RAYMOND CHARLES ERICKSON, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. – Following a bench trial, the trial court convicted Raymond C. Erickson of two counts of unlawful possession of a firearm in the second degree and one count of unlawful possession of a controlled substance, methamphetamine. He challenges the legality of the stop that led to the firearm convictions and he challenges his controlled substance conviction under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Because the court did not err in denying Erickson's CrR 3.6 motion to suppress the firearms, we affirm his unlawful possession of a firearm in the second degree conviction. However, in light of *Blake*, we reverse Erickson's unlawful possession of a controlled substance conviction and remand for resentencing.

FACTS[1]

Around noon on August 6, 2019, Department of Corrections Officer Thomas Grabski and Pierce County Sheriff's Deputy Carl Olson were sitting inside their vehicles in a store parking lot. Both officers are members of the South Sound Gang Task Force. They observed the occupants of

---

[1] The facts derive in part from the trial court's CrR 3.6 findings of fact, which are all, except finding of fact 17, unchallenged and therefore verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

10

a Dodge Dart drive by and throw garbage out the windows.[2] Grabski asked Olsen if he should stop the vehicle. Olson responded yes. Neither officer knew the individuals inside the vehicle.

Grabski pulled his vehicle behind the Dodge and activated his emergency lights. The driver of the vehicle, Matthew Fullerton, pulled over. Erickson was in the passenger seat. Erickson told Olson that he recognized him from a prior police encounter. Olson asked Erickson if he was on community custody, and he said yes. Grabski asked Fullerton if he was also on community custody, and he said yes. Erickson did not have identification on him, but he provided Olson with his name and birthdate.

Olson walked back to his vehicle to confirm the men's identities. At that time, he learned both Fullerton and Erickson were indeed on active Department of Corrections community custody supervision and both were prohibited from possessing drugs or drug paraphernalia.

Olson walked back to the Dodge. He then observed a glass pipe inside the vehicle's opened driver side door compartment and informed Grabski. Because this was a violation of a community custody condition, Grabski conducted a compliance check of the Dodge.

Grabski opened the trunk and observed a locked backpack. He picked up the backpack and, based on his experience, believed the weight of the bag was consistent with a bag containing firearms. He asked who the backpack belonged to and Erickson told the officer that it was his and that there was a gun inside. When Grabski opened the backpack he located two firearms, drug paraphernalia, and a small bag of methamphetamine.

The State charged Erickson with two counts of unlawful possession of a firearm in the second degree and unlawful possession of methamphetamine. Erickson moved to suppress the firearms and methamphetamine based on unlawful seizure and search. He argued that the stop of

---

[2] Littering is a civil infraction. Former RCW 70.93.060(2)(a) (2003).

the car, which led to the search of the car, was pretextual. The trial court denied his motion. The court found that "Neither Deputy Olson nor Officer Grabski had a pretextual reason for stopping the vehicle." Clerk's Papers (CP) at 70 (Finding of Fact 17). The court then concluded that the stop "was not pretextual." CP at 74 (Conclusion of Law 2)

Erickson proceeded to a stipulated facts bench trial where the trial court convicted him as charged. The court imposed a standard range sentence based on Erickson's offender score of 9+. Erickson appeals.

## ANALYSIS

### I.    MOTION TO SUPPRESS

Erickson argues that the trial court erred in denying his CrR 3.6 motion to suppress because he contends that the stop of the Dodge, which led to the search of the car and the finding of contraband, was pretextual. He further argues that, assuming the stop was lawful, the officers exceeded the scope of the stop. We disagree.

####   A.    Standard of Review

We review a trial court's decision on a CrR 3.6 motion to suppress evidence to determine whether substantial evidence supports the court's findings of fact and whether those findings support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Stewart*, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). We review conclusions of law de novo. *Id*.

Erickson challenges the trial court's finding that the officers did not have a pretextual reason for stopping the Dodge and the court's conclusion that the stop was not pretextual.

3

B.      Traffic Stop

In general, the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit searches and seizures absent a warrant or an exception to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 348-50, 979 P.2d 833 (1999). The State bears the burden of showing that an exception to the warrant requirement applies. *Id*. at 350.

There are several recognized exceptions to the warrant requirement including consent, exigent circumstances, inventory searches, searches incident to arrest, plain view, and investigative *Terry*[3] detentions. *Id*. at 349. A stop is also permitted to "issue a notice of a civil infraction." *State v. Duncan*, 146 Wn.2d 166, 178, 43 P.3d 513 (2002). A stop to issue a civil infraction is distinct from a *Terry* stop. *Id*. Littering is a civil infraction. Former RCW 70.93.060(2)(a) (2003). An enforcement officer may issue a notice of civil infraction if the infraction occurs in the officer's presence. RCW 7.80.050(2).

Pretextual traffic stops are unconstitutional under Washington's constitution. *Ladson*, 138 Wn.2d at 353, 358. A traffic stop is pretextual when an officer relies on some legal authorization as "a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement." *Id*. at 358. The court in *Ladson* reasoned, "[T]he problem with a pretextual traffic stop is that it is a search or seizure which cannot be constitutionally justified for its true reason (i.e., speculative criminal investigation), but only for some other reason (i.e., to enforce traffic code) which is at once lawfully sufficient but not the real reason." *Id*. at 351. When determining whether a stop is pretextual, we consider the totality of the circumstances, including the subjective intent of the officer and the objective reasonableness of the officer's behavior. *Id*. at 358-59. A failure to issue a citation is one factor to be considered when determining the officer's

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

subjective intent. *State v. Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000). When an unconstitutional search or seizure occurs, all subsequently uncovered evidence must be suppressed. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018).

Erickson challenges the trial court's finding that the officers did not have a pretextual reason for stopping the Dodge and the court's subsequent conclusion that the stop was not pretextual.

Here, Grabski and Olson were sitting inside their vehicles in a store parking lot. They observed the occupants of the Dodge throw trash out the vehicle's windows. The officers decided to stop the vehicle for littering. At the time, the officers did not recognize the occupants in the vehicle and there was no other basis for the stop.

Because the individuals inside the Dodge committed a civil infraction in the officers' presence, the officers had a basis to stop the vehicle. RCW 7.80.050(2); *Duncan*, 146 Wn.2d at 178. Based on the totality of the circumstances, the officers' subjective intent was to issue a citation for littering. While the officers ultimately did not issue the citation, the subsequent sequence of events justifies the lack of a citation. The officers' decision to stop the vehicle was also objectively reasonable. We hold that substantial evidence supports the trial court's finding that the officers did not have a pretextual reason for stopping the Dodge and the court's subsequent conclusion that the stop was not pretextual.

C.      Scope of Stop

Erickson next argues that the officers exceeded the scope of a lawful stop to issue a citation for a civil infraction by investigating whether Fullerton and Erickson were on community custody. Erickson did not identify this argument below as a basis for suppressing the evidence seized. Because of this, we are without the benefit of findings of fact or conclusions of law to review this

5

issue. In general, the failure to raise an issue below precludes appellate review. RAP 2.5(a)(3). However, in his motion to suppress, Erickson stated, "When stopping someone for littering, it is a 'give the person their ticket for the $50 fine and go' situation. The stop may not be extended further." CP at 15. Erickson also points to several places in the record where the trial court makes passing comments about the detention. Assuming this is sufficient to preserve the issue for review, we conclude the valid scope of the stop to issue a citation for a civil infraction was not exceeded.

A stop is generally limited in scope and duration to fulfill the purpose of the stop. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). "When issuing notice of a civil infraction, an officer may briefly detain a person long enough to check his or her identification." *Duncan*, 146 Wn.2d at 174. A stop for a civil infraction where no vehicle is involved is not as broad in scope as a stop for a traffic infraction. *See Id.*

In *Duncan,* officers noticed Duncan sitting at a bus stop with what appeared to be a bottle inside a paper bag on the bench next to him. 146 Wn.2d at 169. They approached Duncan with the intent to cite him for violating the city's open container ordinance. *Id.* One of the officers recognized Duncan from prior police contact. *Id.* The officer remember that Duncan had a violent history. The officer decided to frisk Duncan because he was wearing a bulky jacket; he discovered a handgun in Duncan's waistband. *Id.* at 170. Officers also located stolen property. *Id.* Duncan filed a motion to suppress the evidence seized. The trial court granted the motion. *Id.* The Supreme Court agreed with the trial court, holding that the scope of a stop for a "nontraffic civil infraction" is limited. *Id.* at 170.

Here, the civil infraction occurred inside a moving vehicle. In this sense, the stop is more analogous to a stop for a traffic infraction. As the Supreme Court stated in *Duncan*, "Traffic violations create a unique set of circumstances that may justify [the] extension of *Terry*." For

example, "'the ready mobility of vehicles and governmental interests in ensuring safe travel.'" *Id.* at 174 (quoting *State v. Johnson*, 128 Wn.2d 431, 454, 909 P.2d 293 (1996)). *Terry* stops may be prolonged when interaction with a suspect "'arouses further suspicions.'" *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975 (1990) (quoting *State v. Guzman-Cuellar*, 47 Wn. App. 326, 332, 734 P.2d 966 (1987)). Notably, this case is distinguishable from *State v. Day*, 161 Wn.2d 889, 898, 168 P.3d 1265 (2007), where our Supreme Court declined to extend *Terry* to a *parked* vehicle that was the subject of a parking infraction. Instead, this case concerns an infraction involving a moving vehicle, squarely within the unique set of circumstances that may justify extension of *Terry*, as held in *Johnson*, 128 Wn.2d 431.

Here, the initial stop was lawful. During that stop, Erickson did not provide a form of identification, but instead identified himself only verbally. He also volunteered that he had a prior police encounter with Olson. Moreover, after Erickson began the conversation, Olson was permitted to follow up by asking if Erickson was on community custody. He said yes. Grabski then asked Fullerton if he was also on community custody and he said yes.[4] Meanwhile, Olson walked to his vehicle, confirmed the men were on community custody, learned they were restricted from possessing drug paraphernalia, and returned to the Dodge. All this is within the permissible scope of a traffic stop for an infraction associated with a moving vehicle where an officer must attempt to confirm the identity of the driver. At this point, based on our unchallenged findings of fact, the pipe was discovered in plain view inside the vehicle.

The possession of the pipe was a community custody violation. This provided articulable facts to justify extending the scope of the stop, which eventually led to the discovery of the firearms

---

[4] We do not take Erickson's argument as asserting rights on behalf of Fullerton; Erickson lacks standing to do so.

and methamphetamine. Therefore, we conclude the purpose of the stop reasonably expanded to include investigations for the community custody violation. The lawful scope of the stop was not exceeded.

## II.     UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE CONVICTION

Erickson argues that his unlawful possession of methamphetamine conviction should be reversed. We agree.

In *Blake*, our Supreme Court held that former RCW 69.50.4013(1) (2017), the statute criminalizing simple possession of a controlled substance, is unconstitutional and, therefore, void. 197 Wn.2d at 186, 195. After the court decided *Blake*, Erickson filed a supplemental brief asking us to remand for the trial court to vacate his conviction for unlawful possession of a controlled substance and resentence him because that conviction was included in his offender score. The State concedes that this is the appropriate remedy.

When the Supreme Court holds a statute unconstitutional, anyone who has been convicted under that statute is entitled to have their conviction vacated. *See State v. Carnahan*, 130 Wn. App. 159, 164, 122 P.3d 187 (2005). A conviction based on an unconstitutional statute cannot be considered in calculating an offender score. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986).

The trial court convicted Erickson of unlawful possession of a controlled substance, methamphetamine, in violation of former RCW 69.50.4013(1). This conviction was included in Erickson's offender score. In light of *Blake*, we accept the State's concession, reverse Erickson's

conviction for unlawful possession of a controlled substance, and remand for the trial court to vacate that conviction and resentence Erickson with his updated offender score.[5]

CONCLUSION

Because the court did not err in denying Erickson's CrR 3.6 motion to suppress the firearms, we affirm his unlawful possession of a firearm in the second degree convictions. However, in light of *Blake,* we reverse Erickson's unlawful possession of a controlled substance conviction and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

I concur:

_____
Glasgow, A.C.J.

---

[5] We note that Erickson has multiple prior convictions for unlawful possession of a controlled substance. Defendants who were sentenced based on an offender score that included prior convictions under RCW 69.50.4013(1) are entitled to resentencing. *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021). We direct the trial court to take this into account when resentencing.

WORSWICK, J. (concurring) — I agree with the resolution of this case. However, I write separately because I disagree with the majority's expansion of the rule to apply the *Terry*[6] exception to a civil infraction involving a "moving vehicle." Majority at 6.

## ADDITIONAL FACTS

Prior to a stipulated bench trial in this case, Erickson filed a motion to suppress under CrR 3.6, and the trial court conducted an evidentiary hearing. During that hearing, Department of Corrections (DOC) Officer Thomas Grabski and Pierce County Sheriff's Deputy Carl Olson testified.

Officer Grabski testified that they observed a vehicle as "it started to be in motion" "throwing trash from its windows" onto a parking lot. Report of Proceedings (RP) at 10-11. Officer Grabski stopped the vehicle at Deputy Olson's request after the vehicle pulled onto the street. Deputy Olson contacted Erickson who was sitting in the front passenger seat. Erickson said he did not have any identification on him, but instead told Deputy Olson his name. Deputy Olson went back to his vehicle to run the names of the vehicle's occupants while Officer Grabski remained at the vehicle.

The law enforcement database revealed that both Erickson and Fullerton were under DOC supervision. While Deputy Olson was running names, Officer Grabski asked Fullerton if he was under DOC supervision, and Fullerton responded in the affirmative. Officer Grabski asked Fullerton to step out of the car so he could speak with him. Officer Grabski testified that he wanted to speak with Fullerton because he was on active supervision with DOC, had just been "littering on the streets," and was in a known drug area. RP at 20. He had Fullerton step out of the vehicle because he wanted to speak with Fullerton alone, and because he had been "digging

---

[6] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

around in the vehicle." RP at 21. When Deputy Olson returned to the vehicle after running names, he saw a drug pipe in a slot in the open driver's door.

ANALYSIS

Erickson argues that because this was a stop for a civil infraction, the officers exceeded the proper length and scope of this stop when they questioned the occupants about their DOC status, ran their names through the law enforcement database, and removed Fullerton from the vehicle. The majority resolves these arguments by determining that because this civil infraction involved a moving vehicle, the *Terry* exception to the warrant requirement applies. Majority at 6. I disagree.

Our Supreme Court "jealously protects" our constitutional rights and has clearly stated that the *Terry* exception to the warrant requirement does not extend to civil infractions. *State v. Day*, 161 Wn.2d 889, 897, 168 P.3d 1265 (2007). Our Supreme Court has shown no sign of expanding the rule and has warned against "judicial creativity" modifying the rule to weaken constitutional protections. *Day*, 161 Wn.2d at 898. Thus, I cannot agree with the majority's analysis. However, I agree that the officers involved here did not violate Erickson's constitutional rights.

First, RCW 7.80.060 states:

A person who is to receive a notice of civil infraction under RCW 7.80.050 is required to identify himself or herself to the enforcement officer by giving his or her name, address, and date of birth. Upon the request of the officer, the person shall produce reasonable identification, including a driver's license or identicard.

A person who is unable or unwilling to reasonably identify himself or herself to an enforcement officer may be detained for a period of time not longer than is reasonably necessary to identify the person for purposes of issuing a civil infraction.

Because Erickson was unable to produce reasonable identification, Erickson's detention by Deputy Olson for the purposes of verifying Erickson's identity was proper.

Second, Officer Grabski's conversation with Fullerton did not extend the length or scope of the stop. When a law enforcement officer stops an individual, "the detention length and scope must be reasonably related to the circumstances justifying the stop." *State v. Veltri*, 136 Wn. App. 818, 822, 150 P.3d 1178 (2007).

Here, Officer Grabski testified that he wanted to have a conversation with Fullerton about "littering on the streets." This conversation occurred while Deputy Olson was running the names through the database. Thus, Officer Grabski's conversation with Fullerton was reasonably related to the circumstances justifying the stop and did not extend the length of the stop.

During Officer Grabski's conversation with Fullerton, Deputy Olson discovered the drug pipe. And upon discovery of the drug pipe, the officers had sufficient suspicion to extend the stop under *Terry*. Thus, Erickson's arguments fail. Because the majority reaches the correct result, I respectfully concur.

Worswick, J.