# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>MICHAEL ROBERT STEWART,<br><br>　　　　　Appellant. | No. 78846-9-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: February 10, 2020 |

APPELWICK, C.J. — Stewart appeals his conviction for indecent exposure. He argues that the trial court's findings of fact entered in support of the open and obscene exposure element of the crime are not supported by substantial evidence. We affirm.

## FACTS

At around 10:00 a.m. on November 1, 2017, S.G. went shopping in Mount Vernon. As she was walking around a building to get to another store, she saw a man on the side of the building behind a dumpster. The man was kneeling on the ground in an upright position, and his body was moving erratically.

S.G. initially thought that the man was having a seizure. The man then turned and made eye contact with her. She noticed that his arm was moving back and forth. She also observed his hands by his genitals, and one of his hands

moving rapidly back and forth. At that point, S.G. believed that the man was masturbating.

S.G. went into the store she was walking towards and told the store clerk that there was a man masturbating outside the door. The store clerk called the police. From inside the store, S.G. saw the man walk across the street to a parking lot. About 5 to 10 minutes later, Officer Chris Carlson arrived and contacted the man in the parking lot. Carlson identified the man as Michael Stewart.

After consulting with an officer who had spoken with the reporting parties, Carlson placed Stewart under arrest. He advised Stewart of his constitutional rights. Stewart agreed to speak with Carlson, and denied being next to the building where S.G. had seen him. Carlson told Stewart that other people had told him he had been next to the building and crossed the street just prior to his arrival. In response, Stewart stated that he had been over there, and thought he might have had a seizure. He did not request medical attention from Carlson.

Later that morning, Detective Sergeant Mike Don conducted an audio and video interview of Stewart at the Mount Vernon Police Department. During the interview, Stewart told Don that he had experienced a seizure. He explained that when he experiences a seizure, he typically has about 12 seconds to loosen his tight fitting clothing. He stated that he had undone his belt, and that, when he was seen, his top layer of pants was probably down around his knees.[1]

---

[1] Don noticed a white stain on the left thigh area of Stewart's pants. As a result, he collected Stewart's pants as evidence. Katherine Woodward, an employee at the Washington State Patrol Crime Laboratory, later performed a

The State charged Stewart with indecent exposure under RCW 9A.88.010(1) and (2)(c). Stewart waived his right to a jury trial. Following a bench trial, the trial court found Stewart guilty as charged. Stewart had 10 prior convictions. His two most recent convictions were for indecent exposure. The trial court did not find a basis to deviate from the standard sentencing range and sentenced him to 60 months of confinement.

Stewart appeals.

## DISCUSSION

Stewart argues that sufficient evidence does not support his indecent exposure conviction. Specifically, he contends that the trial court's findings of fact entered in support of the open and obscene exposure element of the crime are not supported by substantial evidence. As a result, he asserts that the trial court's findings of fact do not support its conclusion of law finding him guilty.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State, and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). Evidence sufficiency challenges admit the truth of the State's evidence and all reasonable inferences that can be drawn from it. State v. Salinas, 119 Wn.2d 192,

---

visual examination of the exterior surface of the pants. She observed four areas of white staining. Upon further testing, she identified semen on the fly area of the exterior of the pants. In its findings of fact and conclusions of law, the trial court did not make a finding that there was semen on the exterior of Stewart's pants. Thus, we do not address this evidence in the remainder of the opinion.

3

201, 829 P.2d 1068 (1992). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

"[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." Homan, 181 Wn.2d at 105-06. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. State v. Solomon, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002). We consider unchallenged findings of fact verities on appeal, and we review conclusions of law de novo. Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 792, 98 P.3d 1264 (2004).

A person is guilty of indecent exposure under RCW 9A.88.010(1) "if he or she intentionally makes any open and obscene exposure of his or her person or the person of another knowing that such conduct is likely to cause reasonable affront or alarm." While the statute requires "open and obscene exposure" of a defendant's person, no witness must see a defendant's genitalia for the State to prove that the defendant exposed himself in another's presence. Id.; State v. Vars, 157 Wn. App. 482, 491, 237 P.3d 378 (2010). The crime has been committed "[s]o long as an obscene exposure takes place when another is present and the offender knew the exposure would likely cause reasonable alarm." Id.

Stewart argues first that a sentence in finding of fact 5 is not supported by substantial evidence. The challenged portion of finding of fact 5 states, "When

4

[S.G.] was not more than 15 feet away from the man, she looked over her shoulder and saw the man's hand was by his genitals and his hand was moving back and forth rapidly."

S.G. testified that she was four or five yards away from Stewart when she saw his arm moving back and forth. The State then asked, "When you are saying you saw his arm moving back and forth can you tell us where his hands were in relationship to his body?" She responded that his hands were "[b]y his genitals." The State also asked her how quickly Stewart's hand was moving back and forth. She responded, "Rapidly." On cross-examination, S.G. clarified that she did not actually see Stewart's penis, but that his hand was "right in front of where his penis would be." She also stated that she could not tell if his pants were down.

Stewart contends that, looking at S.G.'s testimony as a whole, she saw his arm moving back and forth but only "inferred his hand was in the area of his penis." He asserts that if S.G. "actually saw his hands near his penis, as opposed to inferring where his hands were, she would necessarily have been able to see at the same time whether his pants were down." But, S.G. clearly testified that Stewart's hands were by his genitals. She also stated that his hand was right in front of where his penis would be. This testimony constitutes substantial evidence supporting the trial court's finding that S.G. saw Stewart's hand by his genitals, and saw his hand moving rapidly back and forth.

5

Stewart argues second that finding of fact 6 is not supported by substantial evidence. Finding of fact 6 provides, "S.G. was not sure if she saw Mr. Stewart's penis because she saw his hand moving back and forth in the area of where his penis was. That is clear evidence that his hand was not in his pants at the time and, in fact, that his penis was outside of his pants."

S.G. testified that she saw Stewart's body moving around erratically, his hands by his genitals, and his hand moving rapidly back and forth. The State asked S.G. if she had any doubt in her mind as to what was going on at that point. She responded,

> You know, I thought I looked away when he made eye contact, and not wanting to watch I looked away. And for a fleeting moment in my head I thought, well, what if he's really having a seizure and he's hurt. As I got closer, past a tree, I remember looking over, and it was very obvious what he was doing. So I [did] have a second glance there, and looked over and confirmed; that's when I went into the store.[2]

The State then asked her, "When you say it was very obvious what he was doing I'm assuming you are saying [you are] not believing he's having a seizure at this point?" S.G. responded, "Correct, correct, with his hand placement the way he was moving, kneeling, it wasn't a seizure."

Next, the State asked S.G. what she believed Stewart was doing. S.G. stated that it was "pretty obvious" Stewart was masturbating. When asked on

---

[2] The trial transcript states, "So I didn't have a second glance there, and looked over and confirmed." However, because S.G. stated within her answer that she remembered looking over, and that she "looked over and confirmed," it appears that S.G. meant to state that she "[did] have a second glance."

cross-examination if she saw Stewart's penis, S.G. responded, "No, I don't think so." She then stated, "When I looked over and saw where his hand was that was enough." She explained that his hand was "right in front of where his penis would be."

Stewart argues that "S.G.'s testimony does not show it is more likely than not that his penis was outside his pants." He asserts that it is possible to masturbate "while the penis remains inside the pants." But, S.G. testified that it was "obvious" Stewart was masturbating, that his hand was moving rapidly back and forth right in front of where his penis would be, and that, when she looked over and saw where his hand was, "that was enough." Based on S.G.'s testimony, a rational, fair-minded person could conclude that Stewart was masturbating with his penis outside his pants. As a result, substantial evidence supports the trial court's finding that Stewart's penis was outside his pants.

Stewart argues last that finding of fact 7 is not supported by substantial evidence. Finding of fact 7 states that "[t]he exposure of the defendant's penis by the defendant was intentional." In challenging this finding, Stewart's only argument is that "the evidence does not show an exposure occurred." But, as established above, substantial evidence supports that an exposure did occur. And, despite claiming that he had a seizure, Carlson testified that Stewart did not ask him for help in seeking medical attention. Thus, substantial evidence supports that the exposure was intentional.

7

No. 78846-9-I/8

Substantial evidence supports findings of fact 5, 6, and 7. The trial court's findings support its conclusion that Stewart committed indecent exposure. Accordingly, the evidence is sufficient to support Stewart's conviction.

We affirm.

_Appelwick, CJ_

WE CONCUR:

_____

_____

8

State v. Stewart, No. 78846-9-I

DWYER, J. (concurring) — Stewart's conviction should be affirmed. The quantum of evidence adduced at trial was constitutionally sufficient to support Stewart's conviction for indecent exposure. However, because the majority reaches its decision by applying the sufficiency of the evidence test set forth by our Supreme Court in State v. Homan, 181 Wn.2d 102, 330 P.3d 182 (2014), which conflicts with the sufficiency of the evidence standard for criminal cases announced by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), I find it necessary to decline to join the majority opinion.

I

In Jackson, the United States Supreme Court considered a federal habeas corpus proceeding wherein the petitioner asserted that he was "convicted in a state court upon insufficient evidence." 443 U.S. at 309. Jackson submitted his habeas corpus petition protesting his conviction—resulting from a bench trial in the Circuit Court of Chesterfield County, Virginia—for first degree murder. Jackson, 443 U.S. at 309. Therein, the Court noted, Jackson did not challenge "any aspect of Virginia law governing the allocation of the burden of production or persuasion in a murder trial." Jackson, 443 U.S. at 313. Instead, Jackson and the Court focused solely on whether Jackson's constitutional due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution protect him "against conviction except upon evidence that is sufficient fairly to

support a conclusion that every element of the crime has been established beyond a reasonable doubt." Jackson, 443 U.S. at 313-15.

The Court concluded that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318. It noted that "this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson, 443 U.S. at 318-19 (quoting Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)). The Court further explained that such a standard preserves "the factfinder's role as weigher of the evidence . . . through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."[1] Jackson, 443 U.S. at 319.[2]

---

[1] Applying this standard, the Jackson Court ultimately held, after reviewing the record in the light most favorable to the prosecution, that "a rational factfinder could readily have found [Jackson] guilty beyond a reasonable doubt of first-degree murder under Virginia law." 443 U.S. at 324.

[2] The Jackson standard also applies to criminal trials subject to the Fifth Amendment's due process clause. See Musacchio v. United States, __ U.S. __, 136 S. Ct. 709, 715, 193 L. Ed. 2d 639 (2016) (applying the Jackson standard in a federal criminal case). Although Jackson involved review of a bench trial conviction, the Jackson standard also applies to convictions arising from jury trials. See Musacchio, 136 S. Ct. at 714-15 (appeal from a jury trial).

II

Having set forth the sufficiency of the evidence standard prescribed by the United States Supreme Court, I must now explain our Supreme Court's misapplication of this standard in Homan.

The majority opinion correctly delineates the requirements set forth in Homan. The Homan court first stated that "[t]o determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." Homan, 181 Wn.2d at 105 (citing State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)). The court further explained that "[i]n claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." Homan, 181 Wn.2d at 106 (citing State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); State v. Drum, 168 Wn.2d 23, 35, 225 P.3d 237 (2010)). These propositions are entirely consistent with the standard set forth in Jackson.

The Homan court, however, next carved out an exception to the principles it had correctly set forth, stating that

> following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law. State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. Id. We treat unchallenged findings of fact supported by substantial evidence as verities on appeal. Schmidt v. Cornerstone Invs., Inc., 115 Wn.2d 148, 169, 795 P.2d 1143 (1990).

3

181 Wn.2d at 105-06.

These propositions are inconsistent with the standard set forth in Jackson in five ways.[3] First, Jackson did not distinguish between a conviction resulting from a trial by jury and a conviction resulting from a bench trial. There are not different standards. The same standard applies in all cases, as the "question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence." Jackson, 443 U.S. at 323. However, the Court in Jackson did, in fact, review a conviction resulting from a bench trial. 443 U.S. at 309. Irrefutably, the standard set forth in Jackson is the correct standard for determining whether a conviction resulting from a bench trial is supported by a constitutionally sufficient quantum of evidence.

Second, the Homan court's standard focuses review on the result reached by the specific trial judge in each case. 181 Wn.2d at 105-06 ("appellate review is limited to determining whether substantial evidence supports the findings of fact"). This is wrong. Jackson requires that a reviewing court determine whether "*any* rational trier of fact" could have found the defendant guilty beyond a reasonable doubt. 443 U.S. at 319. The focus is not on one particular trial judge or one particular juror. To the contrary, it is an objective standard.

Third, the Homan standard limits review of the evidence in the record to evidence set forth in the trial judge's factual findings. 181 Wn.2d at 105-06

---

[3] It is, therefore, unsurprising that the origins of these principles are to be found in civil, rather than in criminal, cases. Even the Homan court's citation to the Division Two decision in State v. Stevenson actually relies on a civil case. To support the proposition that it should apply a substantial evidence standard when reviewing convictions resulting from bench trials, the Stevenson court cited not to a criminal case but, rather, to Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 792, 98 P.3d 1264 (2004). See Stevenson, 128 Wn. App. at 193.

("appellate review is limited to determining whether substantial evidence supports the findings of fact"). Again, this is wrong. The Jackson standard plainly requires a reviewing court to consider *all* of the evidence, not just the evidence credited by the trial judge in findings of fact.[4] 443 U.S. at 319.

Fourth, the Homan standard views only the trial judge's findings of fact in the light most favorable to the prosecution. See 181 Wn.2d at 106 ("We treat unchallenged findings of fact and findings of fact supported by substantial evidence as verities on appeal."). In contrast, the Jackson standard requires "that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." 443 U.S. at 319.

Fifth, the Homan standard requires only "substantial evidence" to support a trial judge's findings of fact supporting a conviction. This is not the same standard as required by the United States Supreme Court. Jackson requires a reviewing court to determine that the record contains sufficient evidence to enable any rational trier of fact to find "the essential elements of the crime [proved] beyond a reasonable doubt." 443 U.S. at 319.

In sum, Homan's sufficiency of the evidence standard for reviewing convictions resulting from bench trials conflicts with the Jackson standard. It harms the prosecution by narrowing the inquiry on review to consider only a portion—rather than all—of the evidence adduced at trial and by relying solely on

---

[4] As the Jackson Court noted, considering less than all of the evidence would intrude upon the fact finder's role as weigher of the evidence. 443 U.S. at 319. Even when a trial judge has weighed the evidence, because a reviewing court must determine whether *any rational trier of fact* could reasonably conclude that the evidence supports a finding of guilt beyond a reasonable doubt, limiting review to only that evidence which a specific fact finder credited wrongly converts the Jackson standard from an objective one to a subjective one.

whether a specific fact finder—as opposed to any rational fact finder—could reasonably convict the defendant. Simultaneously, it harms defendants by supplanting the demanding beyond a reasonable doubt standard with the less stringent substantial evidence standard.

III

Lest it be argued that the substantial evidence standard from Homan may be supported by an independent state right to be convicted only on sufficient evidence, I will now address why the Jackson standard is applied to protect both the state and federal constitutional right to be convicted only on proof beyond a reasonable doubt.

Shortly following the publication of the Jackson decision, our Supreme Court, in State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980) (Green II), held that Washington courts must apply the federal constitutional standard for appellate review of the sufficiency of the evidence in criminal cases in its reconsideration of State v. Green, 91 Wn.2d 431, 588 P.2d 1370 (1979) (Green I).

In Green I, the court reviewed a challenge to the sufficiency of the evidence necessary to support a conviction for aggravated murder in the first degree. 91 Wn.2d at 442-43. The court applied a substantial evidence test, the prevailing test at the time, limiting review to "a determination of whether the State has produced *substantial* evidence tending to establish circumstances from which a jury could reasonably infer the fact to be proved." Green I, 91 Wn.2d at 442. This analysis led the court to conclude that the State had produced

6

substantial evidence to support a conviction for aggravated murder in the first degree. Green I, 91 Wn.2d at 444.

In response to Jackson, our Supreme Court granted reconsideration of Green I. In the reconsidered opinion, the court abandoned the substantial evidence standard previously applied by Washington courts and utilized by the court in Green I. Green II, 94 Wn.2d at 221. The court acknowledged that the proper inquiry in an evidentiary sufficiency review "is whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime] *beyond a reasonable doubt.*" Green II, 94 Wn.2d at 221-22 (citing Jackson, 443 U.S. at 319). The court further noted that the Green I substantial evidence rule "cannot be equated with Jackson's 'reasonable doubt' rule." Green II, 94 Wn.2d at 222. Although the Green II opinion did not explicitly state that the Jackson standard was the only proper standard for reviewing evidentiary sufficiency, the court's rejection of other standards strongly indicated that the sole evidentiary sufficiency standard applicable in Washington was, in fact, the Jackson standard.

Subsequent decisions of our Supreme Court make clear that the Jackson standard is the only applicable standard for reviewing the sufficiency of the evidence in criminal cases in Washington. In the time period between Green II and Homan (and even after Homan), when reviewing whether a conviction is supported by a legally sufficient quantum of evidence, our Supreme Court has applied only the federal constitutional standard set forth in Jackson. See, e.g., State v. Johnson, 188 Wn.2d 742, 750-51, 399 P.3d 507 (2017); State v.

7

Condon, 182 Wn.2d 307, 314, 343 P.3d 357 (2015); Engel, 166 Wn.2d at 576; State v. Wentz, 149 Wn.2d 342, 347, 68 P.3d 282 (2003); State v. Bencivenga, 137 Wn.2d 703, 706, 974 P.2d 832 (1999); State v. Luvene, 127 Wn.2d 690, 712, 903 P.2d 960 (1995).

Moreover, in Johnson, our Supreme Court explicitly acknowledged that "Washington has adopted the federal standard for sufficiency review." 188 Wn.2d at 758. The court stated that "[u]nder both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt." Johnson, 188 Wn.2d at 750 (citing U.S. CONST. amend. XIV; WASH. CONST. art I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)). Then the court explained that, to guarantee those protections, it reviews claims of constitutionally insufficient evidence by considering "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Johnson, 188 Wn.2d at 751 (internal quotation marks omitted) (quoting Green II, 94 Wn.2d at 221). Thus, when reviewing a criminal conviction, "Washington's *sole* evidentiary sufficiency standard is that which the Fourteenth Amendment requires." State v. Tyler, 195 Wn. App. 385, 394, 382 P.3d 699 (2016), aff'd on other grounds, 191 Wn.2d 205, 422 P.3d 436 (2018).

8

IV

The distinction between the Homan court's standard and the Jackson standard is not merely academic. Indeed, although the ultimate disposition happens to remain the same regardless of the test applied, this case provides a concrete example of how the Homan standard differs from the Jackson standard.

As the majority notes in a footnote, the record contains evidence that a white stain on the outside of Stewart's pants (in the left thigh area) was identified by the Washington State Patrol Crime Laboratory as semen. The majority declines to consider this evidence as part of its evidentiary sufficiency review because the trial court's findings of fact do not contain a finding that there was semen on the exterior of Stewart's pants. Under the Homan rule, the majority's analysis is entirely correct; it is restricted to reviewing the trial court's findings of fact and conclusions of law. 181 Wn.2d at 105-06. Thus, it cannot consider the presence of the semen stain or any inferences arising therefrom in evaluating the quantum of evidence adduced at trial.

Under the Jackson standard, however, the semen stain and any reasonable inferences that could be drawn from its existence must be considered. Under the Jackson standard, reviewing courts must consider *all* the record evidence and give the prosecution the benefit of all inferences that can be drawn therefrom. 443 U.S. at 319. By following Homan, the majority denies the

State the benefit of the clear inference that follows from the evidence of semen on the exterior of Stewart's pants.[5]

The majority nevertheless concludes that substantial evidence supports the trial court's finding that Stewart's penis was exposed because the complaining witness's testimony established that she saw his hand rapidly moving back and forth where his penis would be and that it was obvious that he was masturbating. Such an analysis, however, is far more potent when considered alongside the evidence that semen was found on the exterior of Stewart's pants. When considered together, this evidence is plainly sufficient to permit any rational trier of fact to conclude that the evidence adduced at trial established beyond a reasonable doubt that Stewart exposed his penis while masturbating.

V

Our Supreme Court would do well by disavowing its misstatements in Homan. However, this case raises an additional issue that our Supreme Court has never clarified: What is the nature of the trial error, and what is the appropriate relief required, when the State has adduced a constitutionally sufficient quantum of evidence at trial, but the trial court's findings of fact do not support its determination of guilt?

It is a longstanding rule that when a reviewing court concludes that a constitutionally insufficient quantum of evidence was adduced at trial to support a

---

[5] Plainly, *some* rational trier of fact could conclude that Stewart's penis was, at least in part, outside of his pants at the moment he ejaculated. This rational trier of fact could also conclude that Stewart's ejaculation was the result of the masturbatory behavior observed and testified to by the State's complaining witness.

defendant's conviction, it would violate the constitutional prohibition against double jeopardy to retry the defendant following reversal. Burks v. United States, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). This is so because a reversal premised on the constitutional insufficiency of the evidence has the same effect as an acquittal, which is an absolute bar to retrial.[6] Tibbs v. Florida, 457 U.S. 31, 41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).

The constitutional prohibition against double jeopardy, however, does not bar retrial for the same offense when, on appellate review, a defendant obtains reversal of his or her conviction on any other ground. State v. Wright, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009) (citing State v. Corrado, 81 Wn. App. 640, 647-48, 915 P.2d 1121 (1996)); accord Burks, 437 U.S. at 13. Thus, when the State has adduced at trial a constitutionally sufficient quantum of evidence to support a conviction, but the trial judge's findings of fact do not support its determination of guilt, it appears likely that—regardless of how that particular trial court error is categorized—the remedy would be other than dismissal with prejudice.[7]

---

[6] A reversal premised on the constitutional insufficiency of the evidence to support a conviction is the equivalent of an acquittal for purposes of determining whether retrial would place the defendant in double jeopardy because such a reversal "means that no rational factfinder could have voted to convict the defendant." Tibbs v. Florida, 457 U.S. 31, 41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982).

[7] In the early years of statehood, well before the Fourteenth Amendment was identified as the source of a constitutional evidentiary insufficiency claim, a reversal based on the prosecution's failure to prove the crime beyond a reasonable doubt was remedied by the grant of a new trial—not dismissal with prejudice. This rule is articulated in two cases, which have never been overruled.

> The law presumes the innocence of the appellant until his guilt is established beyond a reasonable doubt. We do not feel that we are invading the province of the jury in holding the evidence before us insufficient to warrant a conviction. . . .
> The judgment of the superior court is reversed, and the cause is remanded for a new trial.

State v. Pienick, 46 Wash. 522, 529, 90 P. 645 (1907).

> While we are [loath] to disturb the verdict of a jury on the ground of insufficiency of the evidence to justify the verdict, yet where the evidence as

11

Nevertheless, guidance from our Supreme Court is needed to conclusively identify the nature of the described error and the proper remedy it demands.

VI

The record herein contains sufficient evidence for a rational fact finder to conclude that all of the elements of the crime of indecent exposure were proved beyond a reasonable doubt. I therefore concur in affirming Stewart's conviction.

disclosed by the record is palpably insufficient to warrant the verdict, as we deem it to be in this case, it is our duty to say so and to award a new trial.
State v. Payne, 6 Wash. 563, 574, 34 P. 317 (1893).
    This Supreme Court authority suggests that an assignment of error premised upon a nonconstitutional claim of insufficient evidence is fully remedied by the grant of a new trial, as opposed to dismissal.