**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE, | ) | No. 82138-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ROOSEVELT WIGGINS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Roosevelt Wiggins moved pretrial to exclude testimony from a Washington State Patrol (WSP) Crime Laboratory reviewer as to the results of his blood draw, in the absence of testimony from the analyst who conducted the tests on the blood sample. After two days of testimony from experts for both the defense and the City of Seattle (City), the municipal court granted his motion to exclude and then dismissed the misdemeanor charge of driving under the influence (DUI) against Wiggins. The City appealed to the superior court, but did not assign error to any of the findings of fact or conclusions of law from the municipal court hearing. After reviewing the record, briefing of the parties, and argument on appeal, the superior court supplanted the trial court's findings and conclusions with its own and reversed the municipal court.

Wiggins then petitioned for discretionary review to this court, which was granted. Because the superior court erred both as to the procedural aspects of the appeal under the Rules for Appeal for Decisions of Courts of Limited

Jurisdiction (RALJ) and as to its interpretation of relevant case law, we reverse the superior court. Accordingly, we reinstate the municipal court's rulings[1] and findings and conclusions resulting from the evidentiary hearing.

## FACTS

In November 2017, Roosevelt Wiggins was pulled over for a head light violation and was subsequently investigated on suspicion of DUI. After Wiggins refused a request from the responding officer to submit to a breath test, the officer obtained a search warrant for a blood draw. Pursuant to the warrant, two vials of Wiggins's blood were collected and sent to the WSP Crime Laboratory[2] for drug and alcohol analysis. Christie Mitchell-Mata is the forensic scientist who performed the toxicology analysis of Wiggins's blood. Mitchell-Mata's work included handling, preparing and testing the samples, interpreting the data in real time, and running additional testing as necessary. Mitchell-Mata's forensic examination of the Wiggins sample produced a blood alcohol content (BAC) of 0.11g/100mL. After completing the testing and initial review process, Mitchell-Mata prepared a final report of her results and conclusions.

The case proceeded to trial, but the City did not elect to call Mitchell-Mata, asserting that she was unavailable to testify because she had left her employment

---

[1] Based on its denial of the City's motion to admit the toxicology results through the reviewer, the court sua sponte dismissed the case against Wiggins without prejudice. Because we reinstate the municipal court's ruling on admissibility and accompanying findings of fact and conclusions of law, that necessarily includes the February 1, 2019 dismissal order on which that admissibility ruling is memorialized.

[2] The witnesses, and municipal and superior courts refer to the lab as the "Washington State Patrol Toxicology Laboratory" throughout the record, but the WSP itself refers to the facility as the WSP Crime Laboratory (as they analyze DNA, fingerprint, and other forensic evidence outside the field of toxicology). See "Crime Laboratory - Washington State Patrol" http://wsp.wa.gov/forensics/crimlabs.htm.

with the WSP Crime Lab and moved out of state.[3]  The City instead sought to admit Mitchell-Mata's report, specifically the BAC results, though Brian Capron, who had signed the final report as the "reviewer."  The municipal court held a two-day evidentiary hearing on the City's motion to admit the blood results through Capron.  Wiggins argued that the motion should be denied based on his right to confront Mitchell-Mata as the primary witness against him under the Sixth Amendment to the federal constitution.  Capron and defense expert Janine Arvizu both testified at the hearing.  The municipal court denied the City's motion and entered findings of fact and conclusions of law at the request of defense counsel.  The court ruled that admission of the analysis and results for Wiggins's blood draw through a WSP Crime Lab toxicology supervisor who did not perform the actual testing would violate Wiggins's constitutional right to confrontation.  The court then sua sponte dismissed the charge against Wiggins based on its ruling to exclude the City's proposed testimony.

The City sought review in King County Superior Court under the RALJ.  Both parties submitted briefing and argument on appeal; as the appellant, the City did not assign error to any of the findings of fact or conclusions of law by the municipal court and only challenged the ultimate ruling on admissibility of Capron's testimony.  The appeal was transferred to another judge while it was pending in the superior court.  After reviewing the briefing and record of

---

[3] Both the City's motion to substitute Capron's testimony for Mitchell-Mata's and the transcript from the hearing on the motion are silent as to any efforts by the City to arrange for Mitchell-Mata's return to Washington to testify. The municipal court did not make a finding regarding Mitchell-Mata's availability.

proceedings from the earlier RALJ argument, as well as the record on appeal, the superior court judge reversed the municipal court's ruling. This court granted Wiggins's petition for discretionary review, which noted the procedural defect of the City's appeal and further contended there is a need for clarification of state case law on confrontation issues related to toxicology evidence. The second argument was based on claims of inconsistent application in both courts of limited jurisdiction and in superior courts sitting in their appellate capacity. A commissioner of this court granted discretionary review and allowed briefing on both issues.

ANALYSIS

I.      RALJ 9.1

A key procedural aspect of this case is independently dispositive; the City failed to challenge any of the municipal court's findings of facts on appeal. Therefore, they became verities which the superior court was required to accept for purposes of the RALJ appeal. As Wiggins points out, the superior court in this case improperly supplanted the unchallenged municipal court findings with its own. RALJ 9.1(b) controls and provides in relevant part:

> The superior court shall accept those factual determinations supported by substantial evidence in the record . . . which were expressly made by the court of limited jurisdiction.

The City asserts that RALJ 9.1 does not require assignments of error similar to the Rules of Appellate Procedure (RAPs) and says it merely "stands for the proposition that the Superior Court is not required to accept a factual finding that is not supported by the record." This is incorrect. Our state's highest court has

been explicitly clear in reinforcing the importance of the superior court's adherence to the standard of review on RALJ appeal, which necessarily includes RALJ 9.1(b), stating, "[i]t is not within the Superior Court's scope of review to examine the evidence de novo." State v. Basson, 105 Wn.2d 314, 317, 714 P.2d 1188 (1986). When we grant discretionary review of a RALJ decision by the superior court, we "sit[] in the same position as the [prior] court in the review of the [municipal] court decision." State v. Weber, 159 Wn. App. 779, 787, 247 P.3d 782 (2011).

In Basson, the Supreme Court reversed a superior court's order on RALJ and reinstated the district court's findings because the superior court had erroneously conducted a de novo review of a suppression hearing and the district court's findings were supported by substantial evidence. 105 Wn.2d at 315, 317. Basson clarified that the superior court's scope of review when sitting in its appellate capacity on RALJ did not permit de novo examination of the evidence. Id. at 317. "We review the record before the district court, reviewing factual issues for substantial evidence and legal issues de novo." State v. Rosalez, 159 Wn. App. 173, 178, 246 P.3d 219 (2010). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." State v. Stewart, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020). We treat unchallenged findings of fact as verities on appeal. Id. If substantial evidence supports the findings, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a dispute of fact differently. Matter of Custody of

- 5 -

<u>A.T.</u>, 11 Wn. App. 2d 156, 162, 451 P.3d 1132 (2019). By contrast, de novo review permits the appellate court to consider the rulings without deference to the trial court's legal conclusions. See <u>Coogan v. Borg-Warner Morse Tec Inc.</u>, 197 Wn.2d 790, 812, 490 P.3d 200 (2021) (explaining de novo review as compared to other appellate standards).

Had the City assigned error to any of the findings or conclusions from the municipal court, the superior court would have been tasked with reviewing the record for the sole purpose of determining whether they were supported by substantial evidence. <u>Basson</u> makes clear that under no circumstances should it have engaged in de novo review of the evidence from the trial court. The superior court improperly ignored the municipal court's findings and entered its own, despite the fact that the City failed to assign error to any of them on RALJ. We rely on the municipal court's unchallenged factual findings in conducting our review. See <u>Glaefke v. Reichow</u>, 51 Wn. App. 613, 616, 754 P.2d 1037 (1988) (rejecting the assertion that the superior court may ignore the district court's factual determinations, and remanding for further proceedings consistent with RALJ 9.1). While the City argues in briefing that assignment of error to particular findings "is not required by the RALJ rules," at oral argument the prosecutor conceded that they have personally argued in other cases that unchallenged findings are verities on appeal.[4] The City's admission at oral argument is consistent with case law, its argument in briefing is not.

---

[4] Wash. Ct. of Appeals oral argument, <u>City of Seattle v. Wiggins</u>, No. 82138-5-I (July 19, 2022), 9 min., 10 sec., <u>video recording by</u> TVW, Washington State's Public Affairs Network, https://tvw.org/watch/?eventID=2022071051

In light of this clear precedent, the superior court erred by conducting de novo review of the evidence. On discretionary review, we sit in the same capacity as the original reviewing court and, accordingly, accept the unchallenged findings and conclusions as true. The record before us clearly demonstrates that the municipal court's findings are supported by substantial evidence. The trial court necessarily engaged in credibility determinations as to both Capron's and Arvizu's testimony. Capron explained his review of Mitchell-Mata's work and asserted he could form an independent opinion based on her results. Arvizu testified about the critical role played by the original forensic analyst, noting it is this person who would be most likely to cause an error leading to inaccurate results, and, perhaps most significantly, concluded that it is this individual who establishes the inculpatory fact of the BAC level. The municipal court ultimately credited Arvizu's testimony over Capron's as to what constituted "raw data" in this case and who connected the inculpatory evidence to Wiggins. We will not disturb such credibility determinations on appeal, nor will we reverse findings of fact if they, as here, are supported by substantial evidence.

Pursuant to the precedent from our Supreme Court in Basson, we reverse the order on RALJ from the superior court and reinstate the findings of fact and conclusions of law issued by the municipal court, as well as the accompanying rulings.

No. 82138-5-I/8

II.     Confrontation Clause

As noted above, the procedural defects in the City's appeal alone are dispositive. However, the superior court also erred in the application of relevant case law on this issue in deciding the RALJ appeal. In briefing on Wiggins's petition for discretionary review, the parties addressed claims of inconsistent application of this body of case law in courts of limited jurisdiction and superior courts on review. Accordingly, we are presented with an opportunity to clarify the application of confrontation clause jurisprudence to toxicology evidence.

In ruling on the petition, a commissioner of this court determined review was appropriate under RAP 2.3(d). The relevant portion of the rule reads:

> Discretionary review of a superior court decision entered in a proceeding to review a decisions of a court of limited jurisdiction will be accepted only:
>
>       …
>
>       (2) If a significant question of law under the Constitution of the State of Washington or of the United States is involved; or
>
>       (3) If the decision involves an issue of public interest which should be determined by an appellate court.

Our commissioner expressly noted that review was "appropriate based on lower courts' apparently inconsistent applications of [State v.]Lui."[5]

Pursuant to that ruling, we turn to the question of whether admission of the toxicology results of Wiggins's blood testing through the reviewer would have violated his right to confrontation. The record demonstrates that the reviewer in this case did not add any original analysis to the work of the primary forensic scientist to render the evidence inculpatory against Wiggins. As such, the

---

[5] 179 Wn.2d 457, 315 P.3d 493, cert denied, 573 U.S. 933 (2014).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

municipal court did not err in concluding that admission of the reviewer's testimony, in place of that of the primary analyst, would violate Wiggins's right to confrontation.

The accused in a criminal case has the right to confront "the witnesses against him." U.S. CONST. amend VI; WASH CONST. art. I § 22. The confrontation clause is relevant when a witness is unavailable. State v. Ramirez, 7 Wn. App. 2d 277, 283, 432 P.3d 454 (2019). This court reviews confrontation clause issues de novo. State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). Our Supreme Court has implemented a two-part test "to determine whether the lack of testimony from a witness who assisted in the preparation of forensic evidence testing implicates the confrontation clause." Ramirez, 7 Wn. App. 2d at 283. In Lui, the state Supreme Court held an expert's testimony is within the scope of the confrontation clause only if (1) the individual is a "'witness' by virtue of making statements of fact to the tribunal" and (2) the individual is a witness "'against' the defendant by making a statement the tends to inculpate the accused." 179 Wn.2d at 462. "Even if a witness imparts facts to the court, the witness is not a witness 'against' the defendant unless those facts are adversarial in nature and have 'some capacity to inculpate the defendant.'" Ramirez, 7 Wn. App. 2d at 284 (quoting Lui, 179 Wn.2d at 480-81).

Based on the testimony presented by the experts at the evidentiary hearing and the resulting unchallenged factual findings, it is clear that Mitchell-Mata, not Capron, was the necessary witness against Wiggins because she was the analyst

No. 82138-5-I/10

who actually performed the blood test that created the incriminating evidence against him. The relevant findings from the municipal court establish key facts for our review:

>2. Forensic Toxicologist, Christie Mitchell-Mata, ran the testing on the blood vials.
>
>3. The testing revealed the defendant's blood to have .11g/100mL of ethanol.
>
>4. Brian Capron was the reviewing toxicologist and did not perform any of the testing on the blood vials.
>
>5. Brian Capron was not present when Christie Mitchell-Mata performed the testing.

These findings are amply supported by the testimony which was heard over the course of two days. As noted in the conclusions of law, there are numerous "subjective and human factors" that existed when the testing was being performed and Capron did not observe Mitchell-Mata perform the testing. Most critically, the trial court noted "Brian Capron did not give additional meaning to the 'raw data[.]'" This is what distinguishes Capron from the experts in both Lui and Ramirez; those experts each engaged in direct analysis of raw data to reach the inculpatory conclusion to be presented in the trial court.

Capron's own testimony demonstrates that he did not engage in the sort of independent inquiry required by the case law in order to permit his testimony as the inculpatory witness against Wiggins. The following passage from Capron's testimony in the municipal court establishes that he played an, admittedly important, but ultimately minor role in Wiggins's case:

>Everything is peer reviewed. So when testing is conducted, it is generated. The primary analyst will then look through it. And then they'll submit it for review. So there's that review process.

- 10 -

No. 82138-5-I/11

> So in this case she had two separate alcohol tests, so two separate sets of data had to be submitted and then reviewed. She had a (inaudible) that needed to be reviewed, and then she had some additional testing that needed to be reviewed. So she had at least four different tests that had to be submitted for review before she could even produce her final report.
>
> At that point in time, then the final report is produced. And so then I grab this case, and then I go though, and I do a review again.

Capron went on to testify that he did not perform any of the tests on Wiggins's blood, nor did he go back and retest the blood after Mitchell-Mata left her employment at the WSP Crime Lab and was no longer available to testify. Capron was clear on direct examination that he merely signed off that he "reviewed the data that [Mitchell-Mata] generated[.]" Wiggins's defense attorney later noted in argument that, prior to testifying, Capron had not signed the report under penalty of perjury. In fact, Capron testified he would never certify a report under penalty of perjury in his capacity as a reviewer because only the person "who actually performed the work can attest to the fact that that was done." Capron was clear that his role was simply to review Mitchell-Mata's work; it is her work and resulting report which provide the inculpatory statements against Wiggins.

The defense expert, Arvizu, works as an auditor in the field of measurement quality and has previously audited the WSP Crime Lab. She testified to numerous aspects of blood testing for the presence of drugs and alcohol where the analyst directly performing the tests makes discretionary decisions, in addition to simply following proper procedures necessary to ensure accuracy. Arvizu explained that the person preparing the samples for the gas chromatography process is actually the "biggest issue" as far as potentially

- 11 -

inaccurate testing or invalid results. She further testified that the preparation of the samples for analysis is the most time-consuming aspect of blood testing for drugs and alcohol. Arvizu indicated that the person who is actually performing the test is "essential" in reaching the results or data produced.

The testimony adduced at the evidentiary hearing supported the findings of fact underpinning the conclusion that Mitchell-Mata was the witness providing the inculpatory statement with regard to the BAC results against Wiggins. The circumstances here are distinct from the context of DNA analysis which necessarily involves two stages of processing; DNA testing that results in individual profiles, and the comparison of those profiles developed from collected samples to establish a match to the accused. See Lui, 179 Wn.2d at 488-89. In DNA profile matches like Lui, it is the latter that drives the inculpatory statement against the accused. Id. The Lui court focused on the fact that it was only once the comparison of the DNA profiles began that "*any* element of human decision-making enter[s] the process." Id. at 488. The court determined that the comparison itself is where "the necessary inculpatory element enters the equation" and that, alone, the DNA profile developed by the other analysts provided nothing inculpatory. Id. at 488.

It is notable that Lui contrasted the question of DNA profile analysis with the toxicology reports at issue in two United States Supreme Court opinions, Bullcoming v. New Mexico[6] and Melendez–Diaz v. Massachusetts.[7] Id. at 488-

---

[6] 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).
[7] 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).

- 12 -

89. <u>Ramirez</u> also reinforced this same distinction as to whether the data alone was inculpatory (by running the BAC test), as opposed to the conclusions from the necessary comparison or analysis of the data. 7 Wn. App. 2d 277. In <u>Ramirez</u>, this court concluded that it was the detective's comparison of the cellphone data which resulted from extraction to connect Ramirez to his co-defendant which resulted in the inculpatory statement. <u>Id.</u> at 285-86. The data report itself was not inherently inculpatory. <u>Id.</u>

The BAC number attributed to Wiggins's blood is the inculpatory statement against him. There was no further analytical work or comparison needed once the BAC was established by Mitchell-Mata. Capron testified that he added nothing to Mitchell-Mata's work; he merely conducted a five- to ten-minute review of her report for general accuracy and typographical errors. Here, we are also guided by the analysis and holding set out by the United States Supreme Court in <u>Bullcoming</u> concerning BAC reports as testimonial statements against an accused. 564 U.S 647, 664-65, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). <u>Bullcoming</u> reinforced that the analyst who conducts the testing is the witness that is making the statement against the accused, stating "[l]ike the analysts in <u>Melendez-Diaz</u>, analyst Caylor tested the evidence and prepared a certificate concerning the results of his analysis." <u>Id.</u> at 665. On this record, the City could only call Mitchell-Mata in order to introduce the BAC results as the inculpatory fact against Wiggins because those results were based exclusively on her testing. We note that the City acknowledged at oral argument that the record indicates there

- 13 -

was no attempt to re-test Wiggins's blood once it became clear that Mitchell-Mata would be unavailable to testify at trial.[8]

Finally, the evidence contained in the record from the trial court amply supports the unchallenged findings. During the two-day hearing, Capron testified that he conducts a roughly five- to ten-minute review of the analyst's work, which includes checking for clerical errors in the final report. This is unlike Mitchell-Mata, who tested and analyzed Wiggins's blood several times over the span of a few weeks. As the defense expert testified, there were numerous discretionary decisions made by Mitchell-Mata during the testing process in order to reach the BAC number which the State sought to utilize in proving its case against Wiggins. Therefore, Mitchell-Mata is the witness "against" Wiggins who could then testify to facts concerning his BAC, which are necessarily subject to scrutiny from the defense via confrontation. As Wiggins also points out, it is telling that Capron testified at the evidentiary hearing that the quantity of ethanol, "was reported as a .11," which further suggests he was appropriately careful not to claim that result as his own work product, given the limited nature of his role in the case.

---

[8] The prosecutor further asserted that in other cases, they had personally called forensic scientists as witnesses who were in no way involved in the initial analysis or report review and had utilized those otherwise uninvolved witnesses to look over the data and testify in court about the results.

While we can envision factual scenarios where such a practice may not be inconsistent with a defendant's right to confrontation, this record does not support that approach in light of how the data was generated and the role of the government's proposed witness. Wash. Ct. of Appeals oral argument, City of Seattle v. Wiggins, No. 82138-5-I (July 19, 2022), 13 min., 45 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/watch/?eventID=2022071051

- 14 -

We reverse the superior court and reinstate the findings of fact and conclusions of law entered by the municipal court, its ruling excluding Capron's testimony, and the accompanying dismissal order.

Reversed.

_____

WE CONCUR:

_____    _____
Coburn, J.                          Smith, A.C.J.