IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

    v.

ELISABETH ASHLEY MCKINLEY,

               Appellant.

No. 84768-6-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — A jury convicted Elisabeth McKinley of vehicular assault. She challenges the sufficiency of the evidence arguing that the State did not prove that she caused the victim "substantial bodily harm." She also requests remand for the trial court to strike the victim penalty assessment (VPA) and DNA fee. We affirm the conviction, but remand for the ministerial act of striking the VPA and DNA fee.

FACTS

In June 2019, Gregory Mosen was in the front passenger seat of the Chevy Suburban that his wife was driving. They were stopped at a light on State Route 104 when they were rear-ended by a fast-moving Chevy Cobalt driven by McKinley. The front of the Cobalt was crushed in the collision. Investigating police smelled intoxicants coming from McKinley, who denied consuming any alcohol, and conducted field sobriety tests, which lead to her arrest and the administration of a breath alcohol concentration

(BAC) test. The results of the BAC test were .165 and .169.[1]

Immediately after the collision, Mosen felt pain in his neck and right shoulder and a tingling sensation going down his arm. His pain progressed and his general day-to-day activities were limited in the days after the collision, including less ability to lift objects, mow his lawn, and continue a previously-begun home remodel.

Many years before the accident Mosen had rotator cuff surgery on the same shoulder, but fully recovered with range of motion and strength. His shoulder was doing well before the accident. Nine days after the accident Mosen saw Dr. Charles Peterson because of the progressing pain and difficulty with movement. Peterson, an orthopedic surgeon, had seen Mosen professionally for a variety of musculoskeletal ailments for more than 15 years and was the surgeon who had previously repaired Mosen's rotator cuff.

Peterson examined Mosen and determined that he retained strength and range of motion in the shoulder, but that Mosen found it painful and difficult to move. After physical therapy without improvement, an MRI[2] on August 1 revealed a torn rotator cuff. Mosen's subscapularis tendon had a tear that was all the way through the thickness of the tendon, but not all the way off the bone. Because rotator cuff tears cannot heal themselves, Peterson recommended surgery to fix the new tendon tear. Unlike Mosen's first surgery where the tear was on the top of the shoulder in the supraspinatus, this surgery required a different incision because the tear was in the front of the shoulder. Peterson performed surgery in January 2020.

---

[1] The court instructed the jury that a person is under the influence or affected by the use of intoxicating liquor when she has sufficient alcohol in her body to have an alcohol concentration of .08 or higher within two hours after driving.

[2] Magnetic resonance imaging.

In February 2020, the State charged McKinley with reckless driving and vehicular assault, alleging that while under the influence of intoxicating liquor or any drug, McKinley operated or drove a vehicle and "caused substantial bodily harm" to Mosen.

At trial the State asked Peterson whether "to a reasonable degree of medical certainty, do you believe that this tear occurred as a result of the collision on June 16th of 2019 that Mr. Mosen described?"  The doctor answered: "Yes."  During cross-examination, Peterson acknowledged that it was "possible" that Mosen had a previous tear, but did not experience symptoms of it until after the accident.  On redirect, Peterson clarified and said, "In this case, with a reasonable degree of medical certainty, I feel that the tear either was caused by the crash, or if it was present, it was made worse by the crash to the point at which the patient sought medical treatment."

McKinley presented the expert witness Dr. Virtaj Singh, a board-certified physical medicine rehabilitation doctor with a subspecialty in pain medicine.  Singh is the medical director at a spine and sports medicine practice.  Singh reviewed the medical records and deposition testimony of Peterson, interview transcripts with Mosen, pictures of Mosen post-surgery, and a collision report including photographs of the car accident.  Singh did not himself examine Mosen.  Singh testified that he believed with a reasonable degree of medical certainty that the tear existed before the collision but in an asymptomatic way but that the collision caused an inflammatory response and pain.  Singh also testified that to a reasonable degree of medical certainty the pain Mosen was experiencing could interfere with his daily activities.  Based on his own clinical experience and review of the medical literature, Singh could "not fathom from a mechanism of injury standpoint how you would get the subscapularis muscle and not

get the labrum, not get the inferior shoulder ligaments, not get anything else but just isolatedly tear that muscle as opposed to it is a degenerative tear." Singh testified that once you are over 65 years old "having degenerative tears in the shoulder is almost inevitable, like at least a third of people have them." Mosen was 66 at the time of the collision.

> I can't see how your classic whiplash injury, even with a seatbelt over that harness, would have caused the subscapularis to tear unless for some reason he is grabbing onto something and somehow it happens without tearing any of the inferior glenohumeral ligaments. I just don't see how that could happen.

Mosen's wife had testified that when she saw in her rearview mirror the vehicle approaching, she said "Oh" and swore seconds before the collision. Mosen testified that when they came to a stop he turned his body back to talk to his father-in-law who was sitting in the back seat when all of a sudden, he heard his wife say, "Oh" and an expletive before the collision.[3] Mosen said his best memory is that the collision kind of lifted the car up, twisting him more as he had the lap belt and the shoulder harness on. Mosen testified that he did not collide with anything else inside the car except his seatbelt and that he could not recall where his right hand was at the time of the collision. Peterson said he put little trust into patients' descriptions of their own body positions during an accident because "it is notoriously inaccurate" and when "peoples' bodies are flailed all over the place instantaneously," they "have no real good recollection of what actually happened."

The jury found McKinley guilty of vehicular assault, but not guilty of reckless driving. The trial court found McKinley eligible for a mental health sentencing alternative

---

[3] Mosen's father-in-law had passed away by the time of trial.

and imposed 24 months of community custody on the condition she meet with her treatment provider and comply with all recommendations, and not use any alcohol or controlled substances without a prescription. The court also imposed a DNA collection fee and victim penalty assessment (VPA).

McKinley appeals. The trial court certified that McKinley was indigent for purposes of her appeal.

DISCUSSION

Sufficiency of the Evidence

McKinley contends that the evidence presented to the jury fails to prove beyond a reasonable doubt that she caused "substantial bodily harm" to Mosen.

In a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine if "any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Stewart, 12 Wn. App. 2d 236, 239, 457 P.3d 1213 (2020). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Theroff, 25 Wn. App. 590, 593, 608 P.2d 1254, aff'd, 95 Wn.2d 385, 622 P.2d 1240 (1980)). Credibility determinations are made by the trier of fact and we therefore defer to the jury findings "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds, Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Our review is "highly deferential to the jury's decision." State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

A person is guilty of vehicular assault "if he or she operates or drives any vehicle . . . [w]hile under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and causes substantial bodily harm to another."  RCW 46.61.522(1)(b).  "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."  RCW 9A.04.110(4)(b).

On appeal, McKinley does not dispute that Mosen had a rotator cuff tear, pain and a temporary but substantial loss of impairment of the function of his shoulder.  Nor does she dispute that she was under the influence of intoxicating liquor at the time she drove her car and hit the vehicle carrying Mosen.  McKinley contends that the State's evidence could only have proven "pain and limited range of motion" and that such a finding cannot rise to the level of a substantial bodily harm.

Pain by itself does not constitute substantial bodily harm.  State v. McKague, 172 Wn.2d 802, 806 n.3, 262 P.3d 1225 (2011) (noting the change in statute by citing RCW 9A.04.110(4)(b); cf. former RCW 9A.04.110(4)(b) (1988)).  Both Singh and Peterson testified that it is possible that a rotator cuff tear is asymptomatic and that an incident such as the car accident could then cause a previously undetected tear to then exhibit pain.

McKinley relies on Singh's testimony that he could not "fathom from a mechanism of injury" standpoint how a tear in Mosen's shoulder muscles could have resulted from the collision.  McKinley argues that this testimony undermines Peterson's testimony so that the evidence presented did not support beyond a reasonable doubt

that McKinley caused Mosen substantially bodily injury.

However, the task of evaluating conflicting testimony and weighing the credibility of witnesses is the exclusive province of the jury. State v. Avington, 2 Wn.3d 245, 263, 536 P.3d 161 (2023). A jury may always accept or reject an expert's evidence or opinion, in whole or in part. State v. Moon, 45 Wn. App. 692, 698, 726 P.2d 1263 (1986), abrogated in part on other grounds, State v. Cheatam, 150 Wn.2d 626, 81 P.3d 830 (2003).

The State's evidence, viewed in the light most favorable to the State, could lead a rational fact-finder to conclude that Mosen suffered substantial bodily harm. The rotator cuff tear in Mosen's shoulder was discovered by an MRI scan following acute shoulder pain he first felt the day of the crash (following a failure of physical rehabilitation to improve his condition). Mosen testified that he had fully recovered with range of motion and strength after a previous rotator cuff surgery many years prior to the accident. Mosen had no problems with his shoulder prior to the collision.

Looking at Mosen's case from a mechanism of injury standpoint, Singh testified that he could not see "how your classic whiplash injury, even with a seatbelt over that harness, would have caused the subscapularis to tear unless for some reason he is grabbing onto something and somehow it happens without tearing any of the inferior glenohumeral ligaments." Mosen testified that he did not collide with anything except his seatbelt, but that he could not recall where his right hand was at the time of the collision. Peterson testified that he put little trust into patients' descriptions of their own body positions during accidents because they are "notoriously inaccurate." Peterson explained that when "peoples' bodies are flailed all over the place instantaneously," they

7

"have no real good recollection of what actually happened." Mosen's wife saw McKinley's car prior to the collision and let out a sudden vocal "Oh" and expletive. Mosen testified that he heard this right before the collision. Viewing the evidence in light most favorable to the State supports a reasonable inference that Mosen, without realizing it, used his right hand to brace himself prior to the collision by grabbing onto something.

Dr. Peterson stated that he believed, to a reasonable degree of medical certainty, that the tears in Mosen's tendons were a result of the car collision that Mosen described to him. After acknowledging on cross-examination that some rotator cuff tears are asymptomatic, on redirect Peterson clarified that "[i]n this case, with a reasonable degree of medical certainty, I feel that the tear either was caused by the crash, or if it was [already] present, it was made worse by the crash to the point at which the patient sought medical treatment."

The jury was free to accept or reject in whole or in part Singh's testimony. The jury also was free to accept Peterson's testimony, which supported a determination that McKinley caused Mosen substantial bodily injury. Accordingly, the evidence was sufficient to support McKinley's conviction of vehicular assault.

<u>Legal Financial Obligations</u>

The parties agree to remand for the trial court to strike the victim penalty assessment (VPA) and DNA fee. In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3), and amended RCW 43.43.7541 by removing language that made imposition of the DNA collection fee mandatory. See LAWS OF 2023, ch. 449, §§ 1(4), 4.

The State concedes that McKinley is indigent. We remand to the trial court to strike the VPA and DNA fee. Because this is a ministerial correction that does not involve the exercise of discretion, the court may do so without McKinley's presence. See State v. Ramos, 171 Wn.2d 46, 48, 246 P.3d 811 (2011).

We affirm the conviction and remand to the trial court so that it may strike the VPA and DNA fee from the judgment and sentence.

_Coburn, J._

WE CONCUR:

_Feldman, J._          _Díaz, J._

9